Althea Deaver, Executor of the Will of Philip F. Deaver, Deceased, and Althea Deaver, Administrator of the Estate of Lester M. Samples, Deceased, and Althea Deaver, Plaintiff-Appellee, v. Ronald Hickox, Defendant-Appellant.

Gen. No. 10,784.

Fourth District.

March 16, 1967.

Ryan & Heller, of Mattoon (Willis P. Ryan and Nolan K. Sims, of counsel), for appellant.

Lemna & Lee, of Tuscola, and Busch, Harrington & Porter, of Champaign, for appellee.

TRAPP, J.

This is an appeal from judgments of the Circuit Court against the defendant and in favor of Althea Deaver, Executor of the Will of Philip F. Deaver, deceased, and as Administrator of the estate of Lester M. Samples, deceased. The actions for wrongful death followed a collision of two automobiles at an unmarked country intersection.

There were no competent eyewitnesses to the accident. The Deaver Buick automobile was proceeding south while the Hickox Falcon automobile was proceeding east prior to the collision. There was standing corn in the northwest corner of the intersection which obscured the view of both drivers. The Hickox car left 39 feet of skid marks prior to the collision and apparently proceeded another twenty to twenty-five feet. The Deaver car was struck on its right side, overturned and came to rest on its top against a corner post in the southeast corner of the intersection about 17 feet from the center of the intersection.

The sole basis of the appeal is the action of the trial court in admitting, over objection, the expression of an opinion by a state highway police officer, Joe Mc-Combs, as to the speed of the vehicles prior to the collision.

The witness had been a state police officer for about eight years. He had six weeks recruit training at the State Police Academy in Springfield, a two-weeks course on traffic patrol and accident investigation at Northwestern University, a two-weeks refresher course conducted by Northwestern University, and a one-month course in basic police work at the University of Illinois Police Institute in Champaign, Illinois. In the accident investigation course many aspects were studied, including taking care of the injured, measurement of skid marks, estimating damage to vehicles and accident reports. As expressed in ambiguous language, determination of speed in reference to skid marks and damage to vehicles was studied. The officer has investigated between 450 and 500 automobile accidents.

The officer described the skid marks and the position of the cars above referred to, stated that the primary damage to the Deaver automobile was at the right-hand door of the two-door vehicle, and that the primary damage to the Hickox vehicle was all in the front end including both front fenders, the hood and bumper, all of which were knocked back a foot to eighteen inches. Photographs of the damaged vehicles were exhibited to the witness. He testified that the oiled surfaced roadway was hot and soft.

The witness was asked the following question to which objection was made:

"Q. Officer, based upon your schooling, your training, and your experience, and based upon your personal observation of the length of the skid marks left by the defendant's car, the type and condition of the oiled surface roadway that you observed there at that time, and the type and extent of damage to the defendant's car, the damage to the left side of the plaintiff's—pardon me—of the doctor's car, the damage to the right side of the doctor's car, the fact that the doctor's car had damage to the top, the

81

fact that the doctor's car had rolled over on its top, the size of each of the automobiles that you observed there, and the general construction of the Buick, and the respective location and distance of each car from the intersection, as you observed them there, now, based upon those observations do you have an opinion as to the speed of the defendant's Falcon when it struck the doctor's automobile?"

After objection, the court interrogated the witness out of the presence of the jury as follows:

"The Court: Let me ask you, Officer, do you feel that you have sufficient background to express an opinion on the matter?

"A. Yes, I have an opinion. I can't say exactly, naturally. I don't think anyone can where you've got an impact involved, say exact speed. I think I could from past experience more than education, can estimate a speed, speculate a speed, rather.

"Mr. Ryan: Did you say speculate a speed, Trooper?

"The Court: You mean estimate, based on skid marks and impact there as you saw it?

"A. Well, Your Honor, more on automobile damage than the skid marks. Skid marks, where you have a terrific amount of automobile damage following it, from my study, leaves a lot to be desired. You can't go much by the skid marks when you've got a terrific lot of automobile damage after it.

"Mr. Ryan: And that's what we have in this case. I understood the trooper to say here that where there are terrific skid marks and terrific damage to the automobile it is difficult to estimate the speed.

"The Court: From the skid marks.

"A. From the skid marks, yes."

82

The jury was then returned to the courtroom. The witness was then asked:

"Q. Now, officer, based on the observations which you have made and which we placed in our question to you do you have an opinion as to the speed of the defendant's Falcon when it struck the doctor's Buick? . . .

"A. I do.

"Q. And what is that opinion?

"A. My opinion is that the speed at the time of impact would be between sixty and sixty-five miles an hour."

It is to be noted that in the colloquy with the court, the witness largely abandoned the use of any training and education upon the subject of computing the speed, but expressed reliance upon his investigation of accidents over the eight years of police service. The record is bare upon whether such investigations referred to included any tests or computations or other such determinations of speed of vehicles based upon physical damage. The witness had never previously qualified as an expert upon the subject.

From American Jurisprudence Proof of Facts, Vol 10, we find several statements regarding the qualifications necessary in making computations of this nature. Included are a knowledge of physics and the study of mechanics, i. e., the characteristics of motion and energy and the formulas using the characteristics of momentum, inertia, velocity and friction, (p 673). It is further said that where there is a substantial weight or design difference between the colliding vehicles, the calculations should be made by technical experts with formulas which consider several aspects of force of impact other than damage, (p 749). See Miller v. Pillsbury, 33 Ill2d 514, p 516, 211 NE2d 733.

From the excerpts of testimony from the proceedings several observations may be made. First, no statement was elicited from the witness, or from others, that there exists a science requiring special skills beyond the ken of the average juror from which a judgment of speed with reference to the vehicles involved could be made with any degree of certainty. Second, no statement was elicited from the witness that he was possessed of the skills necessary to make a determination of speed with relative certainty from the facts presented to him. Third, no discussion was elicited with reference to the factors involved in making a determination of speed either from skid marks, or damage to the vehicles, or from a combination of the two. Fourth, assuming that special skills exist from which a determination of speed may be made with relative certainty, no inquiry was made as to whether such special skills beyond the ken of the average juror were in fact employed by the witness, or anyone else in this case. Fifth, if particular factors were employed to make the determination of speed, those factors were not analyzed in any manner sufficient to enable the jury to determine whether all factors used in arriving at the judgment were, in fact, present. Sixth, as to the degree of certainty of the officer's opinion, an entirely different impression is gained from the testimony presented to the jury, and that presented to the court out of the presence of the jury. Seventh, it appears that if it may be assumed that there is a science involving special skills for determining speeds of vehicles from physical facts which skills are beyond the ken of the average juror, it affirmatively appears that the officer did not use those skills but relied rather upon a generalization of his own experience, which the officer himself described as a speculation.

We have reviewed the numerous Federal, and State cases from other jurisdictions cited by both parties regarding the admissibility of opinion evidence as to speed

84

derived by experts on the basis of physical facts observed following automobile accidents.

In those cases where the expert testimony was admitted it is frequently difficult to ascertain from the reports what testimony was given regarding the expert's qualifications and what methods were used in the analysis of the situation. In those cases where the testimony was rejected, the court either felt that no showing was made of possession of special skills by the witness, or that the witness's opinion was speculative by reason of numerous unknown factors.

Numerous decisions regarding the judgment of speed from damage to vehicles are collected in 93 ALR Later Case Service, Vol 6, p 842. Even those courts which would generally be considered liberal in admitting the testimony of police officers as experts have rejected the testimony where there was an insufficient showing of a knowledge of the principles of mechanics or physics to make such a determination. Crooks v. Pirrone, 228 Cal App2d 549, 39 Cal Rptr 622; Baldwin v. Schipper, 155 Colo 197, 393 P2d 363; Austin v. Hoffman (Tex), 379 SW2d 103.

Our Supreme Court in Miller v. Pillsbury, 33 Ill2d 514, p 516, 211 NE2d 733, noted the conflict of authorities as follows:

"While there is a conflict in authority among American courts on this matter, we are of the opinion that expert testimony on reconstruction of an automobile accident should be admissible *where it is necessary to rely on knowledge and application of principles of physics, engineering and other science beyond the ken of the average juror.* Such evidence does not usurp the province of the jury, since the jury does not have to accept the witness's opinion. Further, such evidence is essential to aid the jury in drawing the proper inferences from the raw physical facts." (Emphasis supplied).

85

■ Our courts have not abandoned the principle that such opinion evidence should be received with caution. Thomas v. Cagwin, 43 Ill App2d 336, 193 NE2d 233, nor do they permit speculation even by experts. Kanne v. Metropolitan Life Ins. Co., 310 Ill App 524, 530, 34 NE2d 732. We approve, as a minimum, the statement in Wigmore on Evidence, quoted in Huguley v. State of Alabama, 39 Ala App 104, 96 So2d 315, and taken from the 3rd edition sec 1927 as follows:

"(1) Where an expert witness, testifying from personal observations gives his opinion as testimony, it is usually necessary to predicate in express terms *hypothetically,* the data upon which the opinion is based. The reason is that otherwise the jury would be unable to tell whether his opinion was meant by him to be applied to the facts ultimately found by the jury."

Our approval of the statement of Professor Wigmore is not intended to indicate that there must be a hypothetical question in all cases, but rather that even with an expert the court and jury are entitled to know the basis of the opinion.

Union Bus Lines v. Moulder, (Tex Civ App), 180 SW 2d 509, presents circumstances comparable to the issues in this case. There a highway police officer had observed numerous automobile wrecks and had attended a school for highway policemen offering instruction with reference to estimating the speed of vehicles from skid marks and apparent force of impact. The trial court considered him qualified as an expert to express an opinion of speed, predicated solely upon the damage to the vehicles and the respective positions on or near the highway. The reviewing court reversed a judgment for the plaintiff, saying:

"The record here fails to show that Probst employed any technical or scientific methods in arriv-

ing at his estimate of the speed of the bus in terms of miles per hour. He did not attempt to detail instructions or tests suggested to him at school in Austin which would enable him to estimate the speed of a vehicle by observations of damage caused by impact."

It is not an answer to say that the matters herein discussed all go to the weight of the evidence. An expert's opinion not based upon developed expertise is no evidence at all. The court should, at a minimum, determine that the witness possesses special skills necessary to cope with the factors of determination involved, and second, that he actually employed those factors prior to permitting the opinion to be given to the jury. Thereafter, even though the matter be beyond the ken of the ordinary juror, the expert's actual analysis of facts which can be known to the juror must be given to make the testimony a matter which can be weighed. A mere statement by an expert without basis or analysis is simply authority by assertion.

The testimony here involved concerned a most important issue to be considered by the jury. Its admission under the circumstances recited was erroneous.

Reversed and remanded.

SMITH, J., concurs.

CRAVEN, P. J., dissents.

CRAVEN, P. J., dissenting:
I would affirm the judgment of the circuit court of Champaign County entered upon the verdict of the jury. The sole basis for this appeal is the alleged error in admitting the testimony of a state highway patrolman as to the speed of the vehicles prior to the collision. The police officer testified and expressed an opinion

based on observations of the scene of the accident, the skid marks, the relative position of the vehicles and the damage to them. He arrived at the scene of the accident before either of the vehicles had been moved. He described the oil surface of the roadway. He measured the skid marks. He observed gouge marks, the terrain and the scene. This witness had nine years' experience as a state patrolman. He had had special training as related in the majority opinion and had investigated some 450 to 500 accident cases. Under these circumstances and absent competent eyewitnesses, the admissibility of this testimony was within the sound discretion of the trial court and its admission was not an abuse of discretion.

In Miller v. Pillsbury Co., 33 Ill2d 514, 211 NE2d 733 (1965), the Illinois Supreme Court talks of the admissibility of expert testimony and concluded that such testimony would be admissible since it was essential in aiding the jury to make proper inferences from the raw physical facts. In Miller, there were no objections to the qualifications of the expert.

In Thomas v. Cagwin, 43 Ill App2d 336, 193 NE2d 233 (2d Dist 1963), a police officer witness was permitted to give his opinion as to the location on the roadway of the point of impact. The court there held that although this type of evidence should be admitted with caution, its admissibility rests within the discretion of the trial judge and there found no abuse of discretion.

The qualifications of the police officer in this case are not asserted to equal the qualifications of the expert in Miller, but from all that can be gleaned from the statement in the Thomas case the police officer here possessed more qualifications than in Thomas.

The annotation found in 66 ALR2d 1048, et seq., is referred to in Miller and in Thomas. The latter case quotes, with approval, language to the effect that there is a strong and apparently growing authority recogniz-

ing that skilled or expert opinion is admissible upon the question. The question there being referred to is place of collision. An annotation in 93 ALR2d 287, et seq., seems not to establish any logical difference between opinion evidence on speed as distinguished from opinion evidence on point of impact as was admitted in Thomas.

The language of the Supreme Court in Miller and the Appellate Court in Thomas permits of the admissibility of the testimony of the state trooper in this case. The nature and extent of his qualification as an expert goes to the weight that should be given his testimony, and not its admissibility.

As stated in Buckler v. Sinclair Refining Co., 68 Ill App2d 283, 293 (216 NE2d 14, 19 (5th Dist 1966)):

> "To render an opinion an expert need only possess special skill or knowledge beyond that of the average layman, and the determination of his qualifications rests within the sound discretion of the trial judge. People v. Jennings, 252 Ill 534, 550, 96 NE 1077. The weight to be attached to such an opinion is a question for the jury in light of the expert's credentials, the facts upon which he bases his opinion and any limitations placed thereon during cross-examination. . . ."

In my view, there was no abuse of discretion by the trial court in admitting the testimony of the trooper.