Rose Skalon, Administratrix of the Estate of Chester R. Skalon, Deceased, Plaintiff-Appellant, v. Manning, Maxwell and Moore, Inc., a Corporation, and Link Belt Company, a Corporation, Defendants-Appellees.

Gen. No. 52,443.

First District, First Division.

June 29, 1970.

146

Lazzara, Narusis and Stimson, of Chicago (Ellis B. Rosenzweig and Joseph Gordon, of Chicago, of counsel), for appellant.

Hubbard, Hubbard, O'Brien and Hall, of Chicago, for appellees.

MR. JUSTICE ADESKO delivered the opinion of the court.

This appeal is from a jury verdict against the plaintiff, Chester R. Skalon and in favor of the defendants. During the pendency of this appeal, the plaintiff, Chester R. Skalon, died and Rose Skalon was appointed administratrix and was substituted as a party plaintiff.

For convenience and because of the state of the record, all references to plaintiff will be to Chester R. Skalon.

This suit was instituted by plaintiff for recovery for personal injuries he sustained while an employee of Scully-Jones & Co., in the city of Chicago. On September 30, 1960, the plaintiff was injured by the fall of a machine which had been raised by a one-ton "Budgit" hoist by use of a load hook that was attached to a roller chain connected to the hoist. The evidence established that a pin (or rivet) used to connect a load hook to the chain had fractured and this resulting pin failure caused the machine to fall upon plaintiff's left leg. The defendants in the case are Link Belt, the company that manufactured the chain involved, and Manning, Maxwell and Moore, Inc., who manufactured the hoist and assembled the chain and its component parts with the hoist.

Plaintiff's suit was based on a theory of product liability, charging the defendants with negligence in the design, manufacture and assembly of the hoist and chain that were the defendants' products. The trial was conducted in October of 1966 and took approximately four weeks to complete. The plaintiff's theory was that the defendants were negligent in the design of the load hook assembly to the roller chain that was used in the hoist. Plaintiff attempted to show that the riveting process undertaken in the assembly of these parts caused the pin to develop a brittle quality; that this brittleness caused the riveted end of the connecting pin to come off, which in turn allowed the pin to move sideways, causing side forces to bear upon the connection which eventually developed into a shearing force; and that the pin failed as a result of the negligence of both manufacturers.

The defendants proceeded under a theory that the hoist had been subjected to improper use by plaintiff's employer. This allegation was asserted by direct evi-

dence and inference that some type of replacement pin had been inserted into the load hook connection of the chain, thus absolving defendants of liability. The evidence showed that one of the links that had been part of the connection had a "C" stamped on it. Defendants' witness said that this link was not designed for the weight bearing end of the chain, but rather for the nonload carrying end. Further, defendants presented expert testimony that some fractures had occurred on the surfaces of the chain nearest the hook shank which were allegedly caused by running the chain into the gear teeth of the hoist. It was further inferred that the chain had been operated without a safety shutoff device, consisting of a collar and spring which would automatically shut off the hoist when it came in contact with certain parts of the hoist. This also gave some credence to the theory that the fractured pin had been a replacement of the one installed by defendants.

The parties to this litigation introduced a great deal of testimony and demonstrative evidence. Both sides used expert witnesses to prove their respective theories, relying upon scientific tests, complicated data and the experience of these experts. The record reveals that many rulings made by the trial judge were made in chambers and involved lengthy discussion by counsel and the court.

For a reversal of this judgment, the plaintiff raises two main issues which are divided into many separate contentions. Those issues are:

(1) That the conduct of defense counsel, taken as a whole, served to prejudice the plaintiff's right to a fair trial; and

(2) That the trial court erred in its rulings as to the admission and exclusion of evidence which resulted in the denial of a fair trial.

We will discuss these issues in that order and will take up the contentions urged by plaintiff separately.

The first issue raised by plaintiff is that the conduct of defendants' counsel had the cumulative effect of denying the plaintiff a fair trial. From this general allegation, plaintiff argues that many of the defense counsel's tactics resulted in prejudicial conduct that requires this court to order a new trial. We will examine each of these charges as asserted by the plaintiff.

First of all, the plaintiff contends that defense counsel deliberately delayed or refused to produce information which was called for by subpoenas served upon the defendants. Defendants answer this contention by arguing that the circumstances show that plaintiff abused the use of subpoenas in light of the inherent difficulties of this case. An examination of the record discloses several cogent facts. The subpoenas were served on October 4, 1966, and were returnable on the following day, October 5. The subpoenas sought a great deal of correspondence, memoranda and records from each of the defendants concerning the machinery involved in this case. The categories covered a multitude of data from these two corporate defendants. The time period covered almost a twenty-year span and both defendants kept their records in home offices which were located in other states.

On October 5, 1966, a conference was held in chambers between the trial judge and both counsel concerning the return of subpoenas. The discussion mainly concerned the subpoena served on defendant Manning, Maxwell and Moore, in which some eighteen categories of items were sought for production. Each one of these items was discussed by the court and counsel. Defense counsel answered each request by either stating that the relevant information had been produced, that the defendant had no such information available, or that the home office was searching for such information and

that if any was available, then it would be produced. Plaintiff's counsel responded by disputing the representations of defense counsel regarding the return of this subpoena. The trial judge's answer was that as to the disputed matters, a hearing would be held in order to settle any questions regarding the subpoena. From the record, it appears this hearing occurred on October 17, 1966.

From our examination of the record we find that no prejudicial error resulted with regard to the production of documents under the subpoenas. There are several examples which plaintiff has emphasized as proof of the prejudice alleged. Plaintiff argues that defense counsel denied the existence of any prior litigation involving similar machinery of the defendants. The subpoena called for all relevant data from the defendants' records concerning failures or lawsuits resulting from defendants' hoists that had occurred prior to September 30, 1960, the date of plaintiff's injuries. Defense counsel stated his clients had no such records, but his search had found a file with defendants' insurance company. This was produced, but plaintiff's counsel did not use this at the trial. Subsequently, the local sales manager of Manning, Maxwell and Moore testified that he had heard of another lawsuit which had arisen sometime after 1960. Thus, this information was all beyond the scope of the subpoena and was produced voluntarily by defense counsel.

Another example of the alleged abuse of subpoenas was plaintiff's requests for parts lists, service manuals, etc. of the hoist and chain involved in this case. Defense counsel initially said that if those documents were available, then the defendants would supply them from their home office location. This further involved the problem of how far back in time the defendant would be required to search for those records. Thus, the date of manufacture was disputed between counsel. This caused the trial judge some difficulty in ruling on the production

of these documents. The record shows that defendants' answers to interrogatories established the year as about 1943. Defense counsel repeatedly asserted that 1943 was the date of manufacture, at one point specifying February, 1943. At trial, one of defendants' witnesses corroborated the fact that the hoist was manufactured in 1943. Due to the reluctance of plaintiff's counsel to accept this date, the trial judge was virtually handcuffed in ruling on this point. At the trial on October 17, the record shows that defense counsel produced copies of some 27 memos, parts or price lists which ran from 1944 to 1960, stating that these were all of the documents that Manning, Maxwell and Moore had available.

The other examples with regard to the subpoenas relied upon by plaintiff are susceptible of other reasonable explanation or are wholly unfounded from the record. The record shows that many documents and memoranda were produced in response to these subpoenas. The delay can be attributed to the difficulty in the extent of the demand for production, the difficulty in ascertaining documents from locations out of state, and from the record it appears that certain questions were so heatedly disputed by both counsel that the trial court had some difficulty in properly ruling upon them. The record justifies the conclusion that no error resulted to the plaintiff concerning the subpoenas for production served upon both defendants.

Secondly, plaintiff contends that defense counsel secreted and hid witnesses who were under subpoena, thereby prejudicing the plaintiff's right to a fair trial. The subpoenas in question were all returnable before the trial judge in his courtroom, and this is substantially what the trial judge instructed both counsel at the beginning of trial.

The plaintiff specifically argues that a subpoena duces tecum issued to Charles E. Vanderlinde was frustrated by defense counsel. This individual was the local

154

sales manager of defendant, Manning, Maxwell and Moore. On October 5, defense counsel represented that this individual did not possess any of the documents or memoranda sought by plaintiff's subpoena. Then, on October 17, defense counsel admitted that Vanderlinde had been available since October 5, but had not reported to the trial judge. Plaintiff's counsel wished to examine Vanderlinde as an adverse witness. The record shows defense counsel stated that Vanderlinde was with defense counsel on October 5 and was subject to defense counsel's call on this subpoena. When plaintiff's counsel requested Vanderlinde's presence, the witness appeared and testified that he had no records available which were to be produced by the subpoena. All the records and documents were procured by defense counsel, presumably from defendants' home office in Michigan. From this state of the record, we are unable to conclude that plaintiff was prejudiced in this regard.

■ Nor are we convinced that any harm resulted with regard to the witness Ray Orwat. This witness was subpoenaed by the defense after the plaintiff had rested his case. Orwat was an employee of Scully-Jones. He was interviewed at defense counsel's office and was released. Plaintiff's counsel complained of this, the trial court reprimanded defense counsel and discussion was had regarding the calling of Orwat. However, after the trial judge agreed to call Orwat as a court's witness, plaintiff's counsel decided his testimony was not desired. Although defense counsel deliberately ignored the trial court's order as to the return of subpoenas, the record does not show any direct prejudice to the plaintiff's right to a fair trial.

Plaintiff's third contention concerning prejudicial conduct of defense counsel is that the latter insisted upon injecting references to plaintiff's recovery of Workmen's Compensation and that witnesses for the plaintiff had a financial interest in the outcome of the instant

155

case. The record discloses that defense counsel asked three witnesses, who were employees and officers of plaintiff's employer, whether any of these witnesses or Scully-Jones had any "interest" in the outcome of the lawsuit. Each witness responded in the negative. As to two of these witnesses, defense counsel attempted to ask further questions along these same lines to which the court sustained the general objections of plaintiff's counsel. Defendant argues that these questions were proper under the decision of Mokrzycki v. Olson Rug Co., 28 Ill App2d 117, 170 NE2d 635 (1960). Plaintiff takes issue with this decision and argues such evidence has been held as incompetent and prejudicial.

This contention brings into focus two competing principles of evidence law. From the plaintiff's point of view, he argues that the hint of insurance or other compensation strongly prejudiced the jury's deliberations adversely to the plaintiff's recovery. The defendant asserts that it has the right to inquire as to the possible interest of a witness which might affect that person's testimony. We note that the questions asked by defense counsel are the same as those which were approved in the Olson case, supra. In that case, this court reasoned that despite the possible prejudice to the jury this could not operate to extinguish the right of a party to establish possible motive, bias or prejudice of a witness.

The plaintiff now argues that this rationale of the Olson case is no longer viable and that such questions were so prejudicial as to affect the jury adversely to the plaintiff's case. The plaintiff relies heavily upon the case of Mangan v. Broderick & Bascom Rope Co., 351 F2d 24 (CA 7th, 1965), where the Olson decision was criticized. In that case, the defense counsel insisted on asking some witnesses as to whether the plaintiff had been paid any compensation by his employer for plaintiff's treatment and who paid the treating physician.

All of these questions resulted in testimony that an insurance company was involved and that a compensation claim was pending. The reviewing court found this to be reversible error, stating that the Olson decision was inconsistent with other precedents. The Mangan decision concluded with the following at page 30:

> "Though we can conceive of instances in which the compensation factor might have the effect of discrediting a witness, we think that the use of such evidence should be limited to instances in which possible bias is revealed by some act or factor more profound than the mere fact of employment by a particular employer."

Despite this singular criticism of the Olson case, we are of the opinion that the employment of its principles in this case was not prejudicial. In the instant case, the testimony elicited by defense counsel resulted in a denial of any interest by the witnesses or their employer, Scully-Jones. No mention of Workmen's Compensation or the involvement of an insurance company was made in the questions propounded in this case. This is in sharp contrast to the Mangan case, supra, and the decisions cited therein.

Furthermore, we think the record reflects that the credibility of these witnesses was strongly in issue, to disclose that more than mere employment was involved when these questions were propounded by defense counsel. These witnesses had testified as to the fact that an automatic shutoff, consisting of a collar and spring, was on the hoist immediately prior to the accident. Yet these parts were never recovered from the accident scene on September 30, 1960, or thereafter, and were never produced at trial. In contrast, the two small pieces of the pin that fractured were recovered and used at trial. In light of the fact that plaintiff's employer im-

157

mediately investigated the accident and stationed an employee to see that nothing was disturbed makes the disappearance of the automatic shutoff parts difficult to understand. This was a vital part of the defense of this case. Accordingly, we think there was ample reason for the inquiry and we find no merit in plaintiff's contention in this regard.

■ The final contention of plaintiff on the issue of defense counsel's prejudicial conduct concerns the alleged improper examination of witnesses. Plaintiff has argued that defense counsel indulged in the use of innuendo in cross-examination of certain witnesses. We think that the state of the record does not justify this assertion. The situations relied upon by plaintiff were not prejudicial or were not caused by defense counsel.

■ ■ On the other hand, plaintiff has pointed out several instances in which defense counsel sought to impeach witnesses by use of depositions and prior statements. In most of these instances, the variance between the witness' testimony and the prior statements did not amount to an inconsistent statement of the witness. The trial judge recognized this problem by sustaining objections to these attempted impeachments. This was properly done under the rule that one cannot use a prior statement as impeachment where that statement was not repugnant to or inconsistent with one's testimony at trial. Knight v. Chicago & N. W. Ry., 3 Ill App2d 502, 123 NE2d 128 (1954). However, we are of the opinion that such attempts at impeachment were not so erroneous as to create reversible error. The record only reveals defense counsel's attempt to impeach some of plaintiff's witnesses but the inquiry was halted by the trial judge in sustaining objections to these questions. Despite the presence of these improper attempts at impeachment, we cannot conclude that plaintiff's right to a fair trial was denied by this state of the record. Ziegler v. Smith, 86 Ill App2d 215, 229 NE2d 340 (1967).

158

The second issue argued by plaintiff is that the trial court erred in the admission and exclusion of certain evidence which thereby prejudiced the fairness of the trial. In this regard, the plaintiff has raised a number of contentions under this issue which must be dealt with separately.

■ Initially, plaintiff contends that the trial court erroneously admitted testimony of defendants' expert witnesses with regard to the failure of the products in question. In support of this contention, plaintiff argues that the expert witnesses were allowed to base their opinions on speculation, conjecture and facts not in evidence. Furthermore, plaintiff argues that the testimony of these experts invaded the province of the jury in that their opinions were based on data which could easily be understood by laymen. As to the last contention, we think the very nature of the case and the theories by which the case was tried reveal that there is no merit in that argument. The questions in this litigation were concerned with very detailed and precise machinery which involved some elaborate scientific testing and terminology in order to explain the functions of the chain and hoist involved. This fact was recognized by plaintiff and defendants as witnessed by their reliance upon expert examination and resulting testimony. We do not agree with plaintiff that the defendant usurped the jury's function by allowing expert opinion as to the possible causes for the failure of this pin.

■ In one of the cases cited by plaintiff, Turnbow v. Hayes Freight Lines, Inc., 15 Ill App2d 57, 145 NE2d 377 (1957), the court announced the general rule that where the issue of causations is disputed, it is error to allow an expert to give an opinion as an absolute certainty on the cause of one's injury. Such would be an invasion of the fact-finding province of the jury. However, the rationale of the court was that an expert's opinion of causation would be. acceptable if couched in conditional

language so as to limit the testimony to a possibility of causal relation. We are of the opinion that both the defendants' expert witnesses as well as plaintiff's experts engaged in this type of testimony when each side sought to prove their respective theories as to the cause of this accident which resulted in plaintiff's injuries.

The remaining contention is that defendants' experts were allowed to state speculative and conjectural opinions. Plaintiff argues that the defendants' experts were allowed to testify on hypothetical facts not in evidence. Defendant argues that an expert witness may give an opinion based upon his own personal knowledge and personal observation, as well as hypothetical questions based on evidence. Krueger v. Friel, 330 Ill App 557, 71 NE 2d 815 (1947); Richards v. Village of Edinburg, 97 Ill App2d 36, 239 NE2d 466 (1968). With these principles in mind we will examine the specific instances relied upon by the plaintiff.

The defendants introduced testimony of Burt Pearce, a mechanical engineer for defendant Link Belt. He had been employed by the company for a number of years and was experienced as to the composition of the chain involved in this case, as well as other chains manufactured by this company. Pearce testified as to the parts composition of the chain and the various tests performed by his company. The witness examined the various parts of the chain that were in evidence. He was asked whether he had an opinion as to why the pin had fractured, based on his examination of these parts. Pearce stated that the pin had fractured as a result of a previous weight overload making the pin susceptible to breakage. His opinions were based on the load tests performed by Link Belt.

Plaintiff argues this was error. We cannot agree with that contention since the question was not couched in terms of hypothetical facts nor were facts assumed by defense counsel propounding the question.

160

The witness' answer brought in the theory of an overload of the chain. We think his experience in the manufacture and testing of such products in his employment justified the witness in testifying as to this possible cause for the pin failure.

■ Plaintiff also takes issue with the testimony of Pearce and the other expert witnesses called by defendants with regard to the improper use of the chain and hoist. The record reveals that defense counsel made inquiry as to certain uses of the chain that might cause side forces to be exerted upon the chain and load hook assembly. Plaintiff argues that such opinions were based on hypothetical facts and contrary to the evidence. We are of the opinion there is no merit in that contention. As stated above, an expert witness may base his opinion on personal knowledge and personal experience as well as hypothetical questions based on the evidence. These questions were asked of individuals who were knowledgeable in the composition of this machinery and who had long years of experience with the operation of this equipment. This fact alone would justify their testimony. However, plaintiff has overlooked the fact that the proof submitted in its case had interjected the theory that side forces had come to bear on this pin, resulting in a shearing action which was contended as the cause of the pin failure. Thus, defendants were merely attacking this theory by asserting their own as to the possible cause of the pin failure.

■ Similarly, the testimony with regard to the operation of the hoist without the shutoff mechanism was not based on conjecture. The evidence was disputed as to whether the safety collar and spring had been removed from the chain when it was operated in the hoist. This was a factual question for the jury's determination. Defendants theorized that the collar and spring had been removed, so that the pin that failed was a replacement of the one they had manufactured. They

161

further sought to prove that during the use of this chain by plaintiff's employer some damage may have been caused by the improper operation of the hoist and chain. We think plaintiff's argument for restricting the evidence as to the use of the chain on the date of the accident would have been unduly restrictive. Accordingly, we conclude that the trial judge properly allowed the defendants to inquire as to that state of the evidence.

Plaintiff next contends that the trial court incorrectly admitted photographs of a tensile strength test conducted upon a length of chain of the type used in the roller chain involved in this case. The argument is that these photographs showed the result of an experiment conducted by Kenneth Packer, one of defendants' expert witnesses, in which there was no proof that the conditions of the experiment were substantially similar to those existing in the case. The witness testified that he had received a length of RC 75 roller chain from defendants in order to conduct the test. He used a simulated hook shank arrangement in order to place a vertical force upon the chain components to test its tensile strength. The witness said he relied upon prints and drawings as to the type of material and the specifications of this length of chain. He stated some of this data was corroborated by the oral statements of defendants' engineers.

We are of the opinion that plaintiff's contention is without merit. The record shows that the witness, Packer, was asked to give an opinion as to the strength of the chain. The tensile strength experiment was conducted for that purpose. This was not the type of experiment that would attempt to substantially reproduce the conditions as existed on the date of plaintiff's accident. The experiment and resulting testimony was only conducted in order to give an opinion as to the strength of the chain and its component parts. Thus, any dissimi-

larity of conditions did not affect the competency of this testimony. Harsh v. Illinois Terminal R. Co., 351 Ill App 272, 114 NE2d 901 (1953).

■ Similarly, plaintiff contends this testimony was incompetent because Packer admitted on cross-examination that he relied upon data supplied by defendant's experts, Pearce and Smith, as to the metal composition of the chain tested. Plaintiff argues that the witness had thus relied upon hearsay to form the basis of his opinion. We are not persuaded by this assertion. Packer was testifying as to the result of an experiment that he had conducted. He was not testifying as to the results of another person's experiment. Mehochko v. Gold Seal Co., 66 Ill App2d 54, 213 NE2d 581 (1966). The data relied upon by Packer did not affect the competence of the evidence. If the witness incorrectly relied upon assertions by other individuals as to the composition of the materials used in the test, this factor would only affect the weight of his testimony.

Plaintiff complains of a certain exclusion of evidence by the trial court. The exclusion occurred when the plaintiff called an attorney to the stand who had been present at a discovery deposition of Link Belt's chief metallurgist. This person had made the statement that the chain involved in this case was designed to last indefinitely. The defendants objected and the trial court excluded this testimony. The grounds were that the statement was not an admission against interest and that it could only be used for impeachment. Plaintiff argues this was error since the statement was an admission against interest.

■ From the record before us, we cannot hold that the trial court erred in excluding this evidence. This statement was not against the interest of defendants. The defense relied upon a theory of improper use of the chain and hoist. The statement that the chain was designed

for indefinite life does not contradict their theory of defense. The fact of design defect and negligence in the manufacture of the chain and hoist were disputed. However, this statement does not contradict the position taken by the defendants on this issue. Kcrleski v. Needham, 77 Ill App2d 328, 222 NE2d 334 (1966).

█ █ Plaintiff's final contention is that the trial court erred in admitting seventeen photographs into evidence. These were defendants' exhibits taken at the Scully-Jones plant, where plaintiff was injured. Plaintiff complains of seven photographs that revealed a number of views of the plant. Plaintiff argues that defense counsel repeatedly examined witnesses by using these exhibits that were marked for identification. No authority has been cited for the impropriety of this procedure and we feel there is nothing incorrect in such a method, particularly since the witnesses identified these photographs. Plaintiff now argues that these pictures portrayed an "unflattering view" of the plant which served to prejudice the jury. However, no objection was made at trial in this regard, so the question has not been properly preserved for our consideration.

█ The purpose and object of a reviewing court is not to determine whether a record is completely free of error, but rather the review is undertaken to determine whether upon the trial there has been error that might have prejudiced the rights of a party. Adamaitis v. Hesser, 56 Ill App2d 349, 206 NE2d 311 (1965). We are of the opinion that the above rule is appropriately applicable to this appeal.

The judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.