ANTHONY DIEDERICH, Adm'r of the Estate of Richard John Diederich, Deceased, Plaintiff-Appellant, *v.* WILLIAM W. WALTERS, Defendant-Appellee.

(No. 73-301;

Second District (1st Division)—August 22, 1975.

*Rehearing denied September 26, 1975.*

Mirabella, Facktor, Mirabella & Kincaid, of Wheaton (John Kincaid, of counsel), for appellant.

Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This was an action to recover damages for the wrongful death of Richard Diederich, a minor pedestrian. The complaint was based upon the alleged negligence of the defendant, William W. Walters, the driver of a motor vehicle which struck and killed the minor pedestrian. The case was tried before a jury which rendered a verdict for the defendant. The plaintiff appeals.

The decedent was walking south along the west side of Clarendon Hills Road in company with Vicki Pusateri and Edward Goff. Apparently he was slightly behind the two witnesses. Defendant was driving south along this road at 9:45 in the evening of September 18, 1971. Vicki Pusateri and Edward Goff heard the defendant's car approaching from the north but did not see it until it passed by them. They had stepped off the pavement onto the shoulder. The decedent was struck and carried down the road by defendant's car. The decedent was 13 years of age.

Two issues are presented in this appeal. The first is whether the trial court erred in permitting the defense counsel on cross-examination of plaintiff's witness, an investigating police officer who was not an eyewitness, to state his opinion as to the speed of defendant's automobile. The second issue raised concerns the refusal of the trial court to instruct the jury that the 13-year-old decedent was presumed to be free from contributory negligence.

On direct examination the investigating officer testified as to what he found when he arrived at the scene of the accident. Specifically, he testified that he found one of the boy's shoes approximately 120 feet north of the body, the other shoe was found off the pavement; that the car's skid marks measured 61 feet and 63 feet; and that defendant's car was found 100 feet south of the end of the skid marks. Upon cross-examination defense counsel elicited testimony from the officer as to the use

of a "nomograph." The witness testified that a nomograph is a chart which gives an approximate measure of the speed of a vehicle, based upon the length of the skid marks and the coefficient of the friction of the road surface.

In the case before us the investigating officer did not testify that he had had any special skill or training in the operation of the so-called "nomograph" and the results obtained therefrom. Nonetheless he testified over objection that, in his opinion, the defendant's motor vehicle was traveling at 34 miles per hour at the time of the impact with the decedent.

■■ In this court's opinion the above is an oversimplification of the essential elements necessary in an attempt by an expert to determine the speed of a motor vehicle from skid marks. Attention is directed to 10 Am. Jur. Proof of Facts 661 (1961). Some 25-30 elements are to be considered in an attempt to determine the speed of a motor vehicle from the skid marks. It will serve no useful purpose to list all of the elements but some of these would include the type of vehicle and its state of repair, the type of pavement; the weight of the vehicle and the distribution of weight in the vehicle; how much reaction time there was; type of tire tread and its state of wear and temperature. It is to be noted that the investigating officer had been on the police force for 5 months and was not qualified in any way either by the plaintiff or the defendant as an expert in estimating the speed of a motor vehicle from the skid marks laid down by that vehicle. Defendant contends that inasmuch as the plaintiff introduced the length of the skid marks into evidence by the investigating officer, he should be allowed to have the officer explain the same by determining the estimated speed the defendant was driving at the time of the striking of the boy herein. This argument must, of necessity, fail because the mere fact that the plaintiff had the investigating officer testify as to the length of the skid marks, a mere observation of the scene of the accident, in no way qualifies the officer as an expert to estimate speed in the manner contended herein. He definitely was not qualified as an expert and his testimony was purely a guess, speculation or conjecture.

In *Deaver v. Hickox* (1967), 81 Ill.App.2d 79, 224 N.E.2d 468, the trial court allowed an investigating officer to testify as to his estimate of the speed of the vehicle involved in the accident therein from the skid marks, based upon his experience as a police officer for 8 years, training in the police academy and courses at Northwestern University. The reviewing court held that the officer's testimony was inadmissable. The court observed:

"First, no statement was elicited from the witness, or from others, that there exists a science requiring special skills beyond the ken

of the average juror from which a judgment of speed with reference to the vehicles involved could be made with any degree of certainty. Second, no statement was elicited from the witness that he was possessed of the skills necessary to make a determination of speed with relative certainty from the facts presented to him. Third, no discussion was elicited with reference to the factors involved in making a determination of speed either from skid marks, or damage to the vehicles * * *.

Fourth, assuming that special skills exist from which a determination of speed may be made with relative certainty, no inquiry was made as to whether such special skills beyond the ken of the average juror were in fact employed by the witness * * *. Fifth, if particular factors were employed to make the determination of speed, those factors were not analyzed in any manner sufficient to enable the jury to determine whether all factors used in arriving at the judgment were, in fact, present. Sixth, as to the degree of certainty of the officer's opinion, an entirely different impression is gained from the testimony presented to the jury, and that presented to the court out of the presence of the jury. Seventh, it appears that if it may be assumed that there is a science involving special skills for determining speeds of vehicles from physical facts which skills are beyond the ken of the average juror, it affirmatively appears that the officer did not use those skills but relied rather upon a generalization of his own experience, which the officer himself described as a speculation." 81 Ill.App.2d 79, 84, 224 N.E.2d 468, 470-71.

■■■ We further find that even if the investigating officer's testimony were valid as that of a reconstruction expert, the same would be inadmissable as there were, in fact, two eyewitnesses at the scene of the accident. As the supreme court stated in *Plank v. Holman* (1970), 46 Ill.2d 465, 470-71, 264 N.E.2d 12, 15:

"However, reconstruction testimony may not be used as a substitute for eyewitness testimony where such is available. Whether it may be used in addition to eyewitness testimony is determined by whether it is necessary to rely on knowledge and application of principles of science beyond the ken of the average juror."

In the case before us we find that the investigating officer was not qualified in any way to testify as to his opinion of the speed of the defendant's vehicle. See also *Miller v. Pillsbury Co.* (1965), 33 Ill.2d 514, 516, 211 N.E.2d 733, 735, where the court stated:

"* * * we are of the opinion that expert testimony on reconstruction of an automobile accident should be admissible where

it is necessary to rely on knowledge and application of principles of physics, engineering and other sciences beyond the ken of the average juror."

We also find under the authority of *Plank v. Holman* that the two witnesses, Vicki Pusateri and Edward Goff, were, in fact, eyewitnesses. The court held in that case that under the circumstances present the plaintiff could have been considered to be an eyewitness although she did not see the entirety of the events leading to the collision. The witness Pusateri testified that she estimated the speed of the defendant's car to be 40 miles per hour as it passed them; the witness Goff testified that he estimated the speed of the defendant's car to be 50 miles per hour as it passed them.

One of the prerequisites for the use of expert testimony is the necessity therefor. (See *Dauksch v. Chamness* (1973), 11 Ill.App.3d 346, 296 N.E. 2d 592; *Dobkowski v. Lowe's, Inc.* (1974), 20 Ill.App.3d 275, 314 N.E. 2d 623.) In *People v. Dietschweiler* (1974), 21 Ill.App.3d 707, 714, 315 N.E.2d 585, 592, we find that there were seven eyewitnesses who testified as to speed of defendant's motor vehicle prior to the impact. The court there held:

"There was no need for the court to use or to depend upon expert testimony."

We therefore conclude the trial court erred in permitting the investigating officer to give his opinion as to the speed of the motor vehicle of the defendant at the time of the impact with the decedent. The officer, of course, was qualified to testify as to physical facts which he observed at the scene, and we reiterate the investigating officer's opinion as to speed was not based upon special knowledge and application of principles of physics, engineering or other sciences beyond the ken of the average juror. We therefore find that the testimony of the investigating officer that the defendant's car was traveling at 34 miles per hour at the time of impact was improper and constitutes reversible error. The inference from this testimony naturally follows that the defendant was driving at a comparably slow rate of speed immediately prior to the impact with the decedent in a 35 mile-per-hour zone.

■■ The next issue presented in this case is whether or not the court should have instructed the jury that there was a presumption that decedent was free from contributory negligence inasmuch as he was under the age of 14 years. As to this presumption the court, in *Hughes v. Medendorp* (1938), 294 Ill.App. 424, 429, 13 N.E.2d 1015, 1017, stated the following:

"At common law a child under the age of seven years was conclusively presumed not responsible for his acts, between the ages

of seven and fourteen years he was still so presumed to be, but this presumption might be overcome by proof of the intelligence or the capacity of the child. That rule is recognized in this State."

Again, in *McWethy v. Lee* (1971), 1 Ill.App.3d 80, 85-86, 272 N.E.2d 663, 666, the court stated:

"But as to Pam McWethy, the 13-year-old, 8th grade plaintiff in this cause, the standard is different: 'a child under the age of 14 years is presumed free of contributory negligence'."

Defendant contends that the giving of Illinois Pattern Instruction (Civil) 10.05 (2d ed. 1971), which defines "ordinary care" as applied to the standard of conduct of a minor as not being the same as that of an adult, is the only instruction that was necessary in this regard. We do not agree. As the court stated in *American National Bank & Trust Co. v. Pennsylvania R.R. Co.* (1964), 52 Ill.App.2d 406, 426, 202 N.E.2d 79, 89:

"* * * and that where negligence is involved the burden is still on the party alleging the negligence to rebut the presumption that a child under fourteen is incapable of negligence."

The court there, considering a violation of a penal statute by a minor, held the same principle was applicable as to negligence and went on to state:

"If the violation is equated to negligence, then it is still incumbent upon the party alleging the violation to rebut the presumption that the child is incapable of negligence." 52 Ill.App.2d 406, 426, 202 N.E.2d 79, 89.

Likewise, in *Strasma v. Lemke* (1969), 111 Ill.App.2d 377, 250 N.E.2d 305, 308, the court stated:

"There is a presumption that a child between the ages of 7 and 14 is incapable of negligence and is not held to the same accountability as an adult. [Citations.] The failure of a child of such years to look before crossing a street will not bar recovery as a matter of law. Morrison v. Flowers, 308 Ill. 189, 139 N.E. 10. Such presumption may be rebutted by evidence of the child's negligent conduct if the jury is instructed to consider the mental capacity and experience of the child. See I.P.I. 10.05. Whether a child is guilty of negligence which bars recovery is a question of fact for the jury."

We do not find that ordinary care of a minor as found in Instruction 10.05 of Illinois Pattern Jury Instructions covers the contributory negligence presumption. We, therefore, find that the jury should, in fact, have been instructed that there was a presumption that a minor under the age of 14 years was free from contributory negligence. It would neces-

sarily follow, of course, that this presumption could be rebutted by the defendant, but the failure to give this instruction constitutes reversible error.

For the reasons stated above the judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.

SEIDENFELD, P. J., and HALLETT, J., concur.