WILLIAM GALINDO, JR., Plaintiff-Appellant, *v.* RIDDELL, INC.,
Defendant-Appellee.

Third District    No. 81-366

Opinion filed June 17, 1982.—Rehearing denied July 23, 1982.

Robert G. Day and Robert G. Day, Jr., both of Peoria, for appellant.

Richard E. Quinn and James R. Morrison, both of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This suit was brought by plaintiff, William Galindo, Jr., against defendant, Riddell, Inc., in order to recover damages for personal injuries sustained by the plaintiff during a football game while wearing a football helmet manufactured by the defendant. The jury returned a verdict for the defendant, and the Peoria County Circuit Court entered judgment accordingly.

On October 11, 1974, the plaintiff was injured while attempting to make a tackle in a varsity high school football game in Chillicothe, Illinois. The plaintiff's injury consisted of a fracture dislocation of his cervical vertebrae at the level of the fifth and sixth cervical vertebrae. As a result of this injury, the plaintiff was paralyzed from the neck down and was rendered a quadriplegic.

At the time of his injury, the plaintiff was wearing a Riddell suspension helmet, referred to as a TK2 model helmet. The helmet consisted of a plastic shell on the outside and a grey rubber pad and a suspension system made of cloth straps on the inside. It was held on the plaintiff's head by a chin strap which fastened to each side of the helmet. The helmet had a face mask attached to it of the type commonly used by players who wear eye glasses.

The plaintiff initially filed suit against Riddell, Inc., the manufacturer of the helmet, Illinois Valley Central Unit School District 321 and Bailey

& Himes, Inc., the retail seller of the helmet. Later, Century Sports, Inc., a football helmet reconditioning company, and Island Plastics, Inc., a manufacturer of football helmet shells, were added as party defendants. Illinois Valley Central Unit School District 321 was dismissed from the suit by the plaintiff before the case went to trial and Century Sports, Inc., Island Plastics, Inc., and Bailey & Himes, Inc., were dismissed from the suit by the plaintiff during the course of the trial.

The plaintiff's complaint against Riddell consisted of the following five counts: Count II, a strict product liability count; count III, a negligence count; count V, a wilful and wanton negligence count; count VII, a breach of warranty count; and count XVII, a strict product liability count seeking punitive damages based upon the defendant's alleged knowledge of the unreasonably dangerous condition of its helmet. Prior to trial, the plaintiff dismissed the two negligence counts against the defendant.

Counts II and XVII alleged that the helmet worn by the plaintiff which was manufactured by Riddell, Inc., was unreasonably dangerous for one or more of the following reasons:

1. The suspension system of the helmet was not adequate to attenuate the impact to the wearer;

2. The padding of the helmet was not adequate to attenuate the impact to the wearer;

3. The face guard of the helmet acted as a lever, so as to cause the head and neck of the wearer to be snapped back when the face guard came in contact with an external force;

4. The face guard of the helmet had no shock absorption capacity and transmitted the force of a blow to the head and neck of the wearer;

5. The rear edge of the helmet was too low on the neck of the wearer;

6. The rear edge of the helmet was not padded; and

7. There was no adequate warning given by the defendant to the users of the product, including the plaintiff, of its potentially dangerous nature.

In addition, count XVII alleged that the defendant knew the helmet was unreasonably dangerous prior to the time of the plaintiff's injury.

At the conclusion of the trial, the jury returned a verdict for the defendant. The plaintiff filed a post-trial motion requesting a new trial based on certain errors which the plaintiff claimed were committed during the course of trial. This motion was denied.

The issues which the plaintiff has presented for our review are whether the trial court erred in: (1) refusing to admit into evidence the defendant's catalogs which contained alternative helmet designs to that of

the helmet worn by the plaintiff; (2) allowing the defendant to present expert testimony of experiments performed regarding helmet-related football injuries while refusing to allow the plaintiff to present evidence which would refute such testimony; (3) allowing defense witness Dr. Joseph Torg to testify to conclusions drawn from the results of a survey of football neck injuries; (4) allowing defense witness Tom Mack to testify as an expert regarding helmet-related football injuries and his own helmet preference; (5) refusing to admit into evidence Riddell engineering reports numbers 1155, 1024 and 1105; (6) refusing to allow the plaintiff to present evidence that the Riddell TK2 helmet had failed the American Standards Institute Z90.1 impact test; (7) refusing to admit into evidence an article entitled "Serious and Fatal Football Injuries Involving the Head and Spinal Cord" and Riddell report number 1076 on the issue of notice to the defendant of the unreasonably dangerous condition of its helmets; (8) allowing the plaintiff's treating physicians to testify as to the plaintiff's injuries over the plaintiff's objection that such information was privileged; (9) refusing to allow the plaintiff to question Riddell's chief engineer about the warning label which Riddell presently places in all helmets which it sells; and (10) allowing the defendants to introduce into evidence other manufacturers' helmets to show the state of the manufacturing art.

■■ During the course of the trial, the plaintiff attempted to introduce into evidence the defendant's product catalogs for the years 1968 through 1973 in an effort to show that Riddell was designing alternatives to the helmet worn by the plaintiff. The defendant objected to the introduction of the entire catalogs for those years on the grounds of relevancy, and the trial court sustained that objection, indicating that only the relevant portions of the catalogs should be offered for admission into evidence. The court did allow the admission of one page in the 1968 catalog and a second page in the 1969 catalog. The plaintiff did not offer any additional pages for admission.

The plaintiff argues it was error for the trial court to refuse to admit into evidence the defendant's catalogs. We fail to see any error in that respect. Upon review of the record, it is apparent the Riddell catalogs contained a substantial amount of information which had nothing to do with alternative helmet designs. Therefore, it was well within the court's discretion to refuse admission of the catalogs in their entirety and to limit their use to relevant portions thereof. *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.

In addition, the plaintiff did not offer into evidence any specific pages outside of the two pages previously mentioned. Because the plaintiff did not offer any other relevant pages for admission into evidence, he cannot now claim error.

The plaintiff was not allowed to introduce into evidence two sets of

X rays taken of him at his doctor's office while wearing two different suspension helmets of the same basic type he was wearing at the time of his injury. One of the plaintiff's contentions was that the rim of his helmet was cut too low across the back of his neck and as a result would come into contact with his neck in the area of the fifth and sixth vertebrae when his head and neck were forced into a hyperextended position.

Each set of X rays contained one X ray with the plaintiff's head in a normal, forward looking position and one or more X rays with the plaintiff's head tilted backward in a hyperextended position. The court sustained the defendant's objections to the admission of these X rays on the grounds that they were posed pictures and therefore inadmissible and that the plaintiff's physical condition at the time the X rays had been taken was substantially different from his condition at the time he was injured.

The court did allow the defendant to present expert testimony which included the results of experiments performed utilizing dummies, cadavers and X-rayed individuals wearing football helmets in order to establish the impossibility of the TK2 helmet striking the cervical spine when the head and neck were hyperextended. The plaintiff had objected to this expert testimony because the defendant had not first established that there was a substantial similarity between the conditions of the experiments and the conditions existing at the time of the plaintiff's injury.

On rebuttal, the plaintiff attempted to show that it was possible for the rear rim of a TK2 helmet to hit the cervical spine area when the head and neck were hyperextended by placing a TK2 helmet on John Galindo, the plaintiff's brother, and pushing upward on the helmet's face mask as Galindo extended his head and neck backward. The defendant objected on the basis of the physical differences between the plaintiff and his brother. The court ruled it would allow the proposed demonstration but only on the condition that no one be allowed to move the face mask or the helmet on John Galindo's head in an upward direction. The court stated that this demonstration could not duplicate the plaintiff's accident and therefore could confuse the jury. The plaintiff then withdrew his offer of this proposed demonstration.

■■ In general, experiments are incompetent as evidence unless the essential conditions of the experiment are shown to be the same as those existing at the time of the accident. (*Ryan v. Blakey* (1979), 71 Ill. App. 3d 339, 389 N.E.2d 604; *Smith v. Ford* (1976), 43 Ill. App. 3d 407, 356 N.E.2d 1306.) However, when an experiment is not represented to be a reenactment of the accident and it deals with one aspect or principle directly related to the cause or result of the occurrence, the exact conditions of the accident need not be duplicated. *Skalon v. Manning, Maxwell & Moore, Inc.* (1970), 127 Ill. App. 2d 145, 262 N.E.2d 146; *Johnson v. Chicago & North Western Ry. Co.* (1956), 9 Ill. App. 2d 340, 348, 132 N.E.2d 678.

■■ It appears that all evidence of experimentation offered by both the defendant and the plaintiff was similar in nature and purpose. The intent was to prove either that the rear rim of the TK2 helmet could have come in contact with the plaintiff's cervical spine when his head and neck were in a hyperextended position or that the rear rim of plaintiff's helmet could not have done so. None of the experiments were intended to be a recreation of the plaintiff's accident. They merely attempted to test the probability of one particular theory of causation.

■■ Therefore, the court properly admitted into evidence the expert testimony of the defendant describing experiments of helmet-related injuries; however, the court erred in not allowing the plaintiff to present his X-ray experimentation and rebuttal demonstration, evidence which was essentially of the same nature as the defendant's expert testimony. This error was especially prejudicial to the plaintiff because of the allowance of the defendant's expert testimony in its entirety and without limitation. The defendant having persuaded the court to admit its expert testimony on this basis is not in the position to object to similar testimony on the part of the plaintiff. *Watson Orchards, Inc. v. New York, Chicago & St. Louis R.R. Co.* (1931), 263 Ill. App. 397.

Dr. Joseph Torg, a medical doctor, testified as an expert witness for the defense. His testimony included the results of a survey he conducted on football head and neck injuries in which information was solicited from various high school officials and athletic trainers throughout the country. Dr. Torg concluded from the survey results that football helmet design features were not a contributing cause of neck injuries. The plaintiff objected to Dr. Torg's testimony on the grounds that it was based on hearsay, that no proper foundation had been laid regarding the methods of the survey, and that it was irrelevant to the plaintiff's injury as to how other football neck injuries had occurred.

■■■ We agree with the plaintiff that Dr. Torg's testimony was inadmissible. In the first instance, Dr. Torg's conclusions were clearly based on hearsay statements. Statements made by out-of-court declarants as in a poll or survey in order to prove the truth of the matter asserted are hearsay and therefore inadmissible unless found to be an exception to the hearsay rule. *United States v. An Article of Drug* (5th Cir. 1969), 415 F.2d 390.

One exception to the hearsay rule in this respect could be based upon the survey's inherent reliability because the methods utilized are generally accepted in the scientific community to produce statistically accurate results. (*Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.) In the case at hand, the defendant laid no foundation whereby the court could conclude that a scientifically accurate method of survey was utilized by Dr. Torg. His method, that of sending out questionnaires to

high school administrators and athletic trainers and thereafter relying on their responses without any knowledge as to who provided the information, is inherently unreliable. Therefore, the trial court erred in allowing such testimony to be introduced into evidence.

Thomas Mack, a former professional football player for the Los Angeles Rams, testified as an expert witness for the defendant. His qualifications included a 20-year football career and a bachelor's degree in mechanical engineering. It was his opinion that the rear rim of the football helmet does not cause cervical spine injury.

■■ While it is true that the court has broad discretion in determining whether or not a witness has been qualified as an expert (*People v. Park* (1978), 72 Ill. 2d 203, 380 N.E.2d 795; *Northern Illinois Gas Co. v. Wienrank* (1965), 66 Ill. App. 2d 60, 213 N.E.2d 411), the trial court in this instance has abused its discretion. In order to qualify as an expert, it must be shown that the proposed expert possesses special skills beyond the ken of the average juror and that he employed those skills in forming an opinion. (*Deaver v. Hickox* (1967), 81 Ill. App. 2d 79, 224 N.E.2d 468.) Mr. Mack's qualifications did not enable him to form an opinion as to the mechanism of the plaintiff's injury. It was never established that being a professional football player or being a mechanical engineer gave him the expertise to analyze the cause of a football injury, and no testimony was given to indicate that he ever utilized engineering skills to determine the causation factors of football injuries.

Mr. Mack's testimony was more in the nature of a testimonial. He simply preferred wearing the Riddell TK2 helmet during his career. In addition, because of Mr. Mack's national prominence and reputation, this type of testimonial was especially damaging to the plaintiff's case. Therefore, his opinion as to the impossibility of cervical spine injury from a low-cut helmet and his expressions of confidence in the TK2 helmet were inadmissible as expert testimony.

■■ The trial court refused to admit into evidence Riddell engineering reports numbers 1155, 1024 and 1105. These reports dealt with comparison studies and impact performance tests of various Riddell helmet designs.

Although some confusion exists in the record, apparently the trial court felt that pertinent portions of reports numbers 1155 and 1024 had been read to the jury by the defendant's chief engineer and therefore their admission into evidence was not required. In addition, the trial court felt that the jury would become confused because of the technical nature of these reports.

Upon review of the record, we found that only one sentence was read to the jury from report number 1155, a recommendation of the need for more padding in the TK2 helmet, and that no part of report number 1024 was read to the jury. The defendant apparently did not have any

strong objections to the jury becoming aware of the information contained in these reports having claimed at the time they were offered that the pertinent portions of the reports had already been read to the jury. Because these reports contained test results and lengthy discussions which could have been quite helpful to the jury in their determination of liability, it was error not to admit them into evidence.

Report number 1105 was not considered admissible by the court for the reason that the TK2 helmet was not specifically covered therein, therefore rendering the report irrelevant. The plaintiff contended that the report was relevant because the helmet tested was merely the TK2 helmet with aero cells inserted, a more effective design which fell short of the impact standards established by the defendant. It is our opinion that report number 1105 was relevant in that it tended to show the TK2 helmet had serious impact resistance problems. The trial court, therefore, erred in not allowing this report to be admitted into evidence.

The plaintiff attempted to present evidence during the course of trial that the TK2 helmet had failed the American National Standards Institute Z90.1 impact test. ANSI is an organization which develops manufacturing standards for various products. The ANSI committee designated as the Z90.1 Committee was responsible for developing standards for protective headgear for vehicular uses. The court refused to admit evidence of the Z90.1 test for the reason that the test was irrelevant.

■■ ■ A party must lay a proper foundation in order to introduce evidence relating to industry standards or codes. (*Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 368 N.E.2d 1299.) The court was not shown how or why the Z90.1 test standards could be applied outside of the field of vehicular headgear. Not having laid the proper foundation, it was within the court's discretion to find the test irrelevant in proving defects in the TK2 football helmet.

In 1961, Dr. Richard D. Schneider, a neurosurgeon from the University of Michigan Medical School, wrote an article entitled, "Serious and Fatal Football Injuries Involving the Head and Spinal Cord," appearing in the Journal of the American Medical Association. In that article Dr. Schneider related his studies of serious head and neck football injuries and made suggestions for changes in football helmet construction in order to prevent such injuries.

The plaintiff offered Dr. Schneider's article for admission into evidence to prove the defendant had been placed on notice prior to the plaintiff's injury of the unreasonably dangerous condition of the TK2 helmet. The trial court sustained the defendant's objection to the admission of this article on the grounds that it constituted hearsay.

Riddell report number 1076 was also offered by the plaintiff for the purpose of showing the defendant had notice of the TK2 helmet's unrea-

sonably dangerous nature. The report indicated that serious injuries to the neck and spinal cord could be caused by the back rim of a football helmet pushing against the wearer's neck by hyperextension of the head as a result of a force being applied to the face mask. The defendant objected to the admission of the report on the grounds of relevancy, and the trial court sustained that objection.

The defendant has abandoned its arguments of hearsay and relevancy to support the trial court's refusal to admit Dr. Schneider's article and report number 1076, now claiming that those exhibits were properly excluded as cumulative evidence on points already conceded at trial. Such contentions are not proper grounds to sustain the refusal to admit the article and report number 1076. In count XVII of the plaintiff's complaint, punitive damages were sought, based on the defendant's alleged knowledge of the unreasonably dangerous condition of the TK2 helmet. Both Dr. Schneider's article and Riddell report number 1076 were relevant in proving that point. A concession by the defendant that the article and report do exist and have been read by defendant personnel did not provide the jury with the detail of that material, and certainly such detail was not cumulative of any previous testimony related to Dr. Schneider's theories and the content of Riddell report number 1076. Therefore, the refusal to admit Dr. Schneider's article and report number 1076 was error.

Dr. Henderson and Dr. Elwood, two of the plaintiff's treating physicians, were allowed to testify as to the nature and cause of the plaintiff's injuries over the objection of the plaintiff that such information was privileged. Section 5.1 of "An Act in regard to evidence and depositions" (Ill. Rev. Stat. 1979, ch. 51, par. 5.1) states that no surgeon or physician is permitted to disclose information obtained while attending a patient in a professional capacity. Several exceptions are listed in the statute, one of which is the exception for civil suits where the patient's physical or mental condition is at issue.

This exception applies to the case at hand. Clearly, the plaintiff's physical condition was at issue and the defendant should have been allowed to question the plaintiff's treating physicians without any privilege limitation. The trial court, therefore, properly allowed the testimony of those treating physicians.

■■ The trial court disallowed the plaintiff's questioning of the defendant's chief engineer about a warning label the defendant had begun to place inside its helmets in January of 1980. The plaintiff's claim was that the defendant's TK2 helmet was unsafe because it did not contain a similar warning label. This warning label cautioned players not to butt or spear opposing players with the helmet because such activity could cause severe injuries to the head or neck.

It is our opinion that due to the extended interval of time between the

plaintiff's accident and the use of the warning label, such evidence was not relevant to the issue of helmet safety. The actual placement of the label in the defendant's helmets was more than five years after the plaintiff's injury. The trial court, therefore, did not err in disallowing questions concerning the warning label.

■■ At trial the defendant presented evidence in order to demonstrate that its helmet was designed and manufactured in the same manner as nearly all other helmet manufacturers at the time. The plaintiff objected to the admission of this testimony on grounds of relevancy. This objection was overruled. The plaintiff had introduced evidence of one other helmet manufacturer who used a different design than that of the defendant.

Count XVII of the plaintiff's complaint requested punitive damages based upon the defendant's alleged knowledge of the dangerous condition of its helmets and its subsequent failure to warn the plaintiff of that danger. When knowledge of a product's defective condition is an element of liability, both parties should be allowed to present evidence either establishing or refuting the existence of such knowledge. The plaintiff was allowed to present evidence to prove that the defendant was on notice of the dangerous condition of its helmets. The defendant should have been allowed to rebut such evidence by showing that it could not possibly have been aware of any defect in its helmets when the vast majority of other helmet manufacturers constructed their helmets by the same methods. Therefore, it was not error to allow the defendant to present such evidence on the state of the manufacturing art of football helmets.

Because of the prejudicial effect of the errors enumerated above, it is our opinion that an unfair advantage was afforded the defendant at trial. This case is, therefore, reversed and remanded to the circuit court of Peoria County for a new trial consistent with the opinions expressed herein.

Reversed and remanded.

SCOTT and HEIPLE, JJ., concur.