**William Scott, Plaintiff-Appellee, v. Instant Parking, Inc., Defendant-Appellant.**

**Gen. No. 52,527.**

First District, Second Division.

October 15, 1968.

Rehearing denied November 8, 1968.

Sydney W. Hollander, Donald J. Seeley, and Branko M. Steiner, of Chicago (Branko M. Steiner, of counsel), for appellant.

Peter Fitzpatrick and George Kaye, of Chicago (Jesmer & Harris, and Fitzpatrick & Kaye, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

This was an action to recover for personal injuries sustained by plaintiff when he was struck in the head by a descending elevator operated by an employee of the defendant. The jury returned a verdict in favor of plaintiff and assessed damages in the amount of $21,000 and judgment was entered thereon. The jury also answered, all in the affirmative, special interrogatories questioning whether defendant was guilty of ordinary negligence, whether defendant was guilty of wilful and wanton misconduct, and whether plaintiff was guilty of contributory negligence.

Defendant prosecutes this appeal, maintaining that the jury's verdict is against the manifest weight of the evidence; that plaintiff was guilty of contributory wilful and wanton misconduct; that the trial court committed error by allowing evidence of other accidents involving the elevators in defendant's building to be presented to the jury without requiring the plaintiff to establish the conditions under which they occurred; and that the trial

court erred with respect to the giving of certain instructions to the jury. Defendant raises no question as to the amount of damages awarded by the jury.

The mishap occurred on June 16, 1960, on premises occupied and employed by defendant as an automobile parking garage in Chicago. The evidence shows that the garage building is a multiple-story structure serviced by three large elevators for the movement of automobiles between floors. The elevators were manually operated by employees of the defendant. Plaintiff's employer, the Checker Taxi Company, stored a number of its inoperable taxicabs on several of the upper floors of the building, and on the date in question plaintiff and a crew of five other men were dispatched to the garage to get two cabs out of storage. The procedure to be followed by plaintiff in securing the cabs was to have been the same as that employed in the past, namely, plaintiff and his crew would be carried to the desired floor of the garage in one of the building's elevators operated by defendant's employee. The elevator operator would drop the men off at the floor where they would secure the cabs desired and ready them for removal from the building. When the cabs were in position to be lowered to the ground floor, plaintiff was to shout down the elevator shaft to summon the elevator; no other call system was provided for this purpose. The plaintiff, his crew and the taxicabs were then to be lowered to the ground floor.

There is evidence that, when the elevator containing plaintiff and his crew reached the desired floor, the elevator shaft doors to the floor were partially open and the elevator operator opened them the rest of the way to let plaintiff and his crew out of the elevator. The shaft doors operate in a vertical manner, half of the door moving upward and the other half moving downward. There is also evidence that after plaintiff and his crew alighted from the elevator, the elevator operator closed the shaft doors but that they rebounded partially open again.

The floor on which the cabs were stored was poorly lighted and flashlights were used to secure the desired cabs, which were then brought to the elevator shaft for removal to the ground level. The shaft doors were partially open, as previously noted, and, in accordance with the prior instructions of the elevator operator, plaintiff shouted into the shaft to summon the elevator to the floor. The evidence is conflicting as to the noise level in the building, the elevator operator testifying that it was quiet whereas other witnesses testified that there was a great deal of noise from automobile horns, automobile and equipment motors, slamming and banging doors, and the like. Several minutes passed and plaintiff called into the shaft a second time. After waiting approximately 20 minutes from the time he first called, plaintiff observed a light descend in the darkened elevator shaft and approached the shaft to call a third time. As he leaned forward to call, the back of plaintiff's head was struck by the descending elevator, forcing his forehead against the lower portion of the shaft doors. Plaintiff's body was flipped into the elevator cage and he sustained substantial and severe injuries requiring extended hospitalization and medical attention. During the entire period from the time his head came into contact with the elevator until he was hospitalized, plaintiff did not lose consciousness.

The evidence is uncontradicted that the construction of the three elevators is such that the elevator is inoperable when the elevator shaft doors are open. Each elevator, however, is equipped with a "by-pass" device which, if activated, permits the elevator to function when the shaft doors are open. A City of Chicago ordinance restricts the use of the "by-pass" button solely to emergency operations.

The elevator operator denied having employed the "by-pass" device on the date of plaintiff's injury. He testified that the elevator did not stop automatically when plain-

tiff was struck, but that it was brought to a halt by the operator's affirmative action. Plaintiff testified that the operator stated immediately after plaintiff's body had been flipped into the elevator cage, "They told us to run with these doors open." The elevator operator denied making that statement and testified that he at that time stated to plaintiff that he previously told him to keep his head out of the elevator shaft.

A City of Chicago Building Department elevator inspector testified that effecting a continuous use of the "by-pass" device was a simple, five-minute operation. It consisted of removing four screws and a faceplate covering the button, wedging the button with a piece of cardboard or the like, a process called "plugging," and replacing the faceplate and screws. Records of the City of Chicago Building Department and other evidence show that the "by-pass" buttons on the elevators in defendant's building were found, upon investigation, to have been plugged or otherwise tampered with on numerous occasions: a fatality in December 1957; a nonfatal accident in April 1958; a fatality in April 1959; a report on progress in May 1959; a repair order in December 1960; several instances in January 1961; and a warning directly from defendant's own engineer in charge of servicing the elevators concerning the tampering with the "by-pass" devices.

■ Defendant first maintains that the jury's verdict is against the manifest weight of the evidence. The evidence in the record clearly supports the special finding made by the jury that defendant was guilty of wilful and wanton misconduct. In tampering with the "by-pass" devices on the elevators, in absence of the existence of emergency conditions, defendant acted in violation of the Municipal Code and the evidence shows defendant persisted in this activity despite warnings to desist from persons in authority and from its own elevator service engineer. The evidence further shows defendant failed

to provide a safe method of summoning elevators in the building, necessitating a party desirous of elevator transportation to shout into the elevator shaft through the shaft doors which were open as a result of the tampering with the "by-pass" devices; in fact, this was the method of summoning the elevators suggested by defendant. The evidence also shows a high noise level in the building, which could be a reason why plaintiff was required to call into the shaft three times and wait some twenty minutes before the elevator arrived. Under all the circumstances we are unable to say that the jury's verdict is against the manifest weight of the evidence.

■ As to whether the court should have found plaintiff guilty of contributory wilful and wanton misconduct as a matter of law, the evidence adduced at trial raised a question of fact for the jury to determine in this regard. See Ziraldo v. W. J. Lynch Co., 365 Ill 197, 6 NE2d 125; Mueller v. Phelps, 252 Ill 630, 97 NE2d 228. The doors to the elevator shaft were partially open on the floor where plaintiff and his crew were securing the taxicabs; plaintiff was instructed by defendant to shout into the shaft in order to summon the elevator; the area was noisy and poorly lighted; plaintiff was in the process of making his third call into the shaft when he was struck by the descending elevator, some twenty minutes after the first call, and only after he observed a light descend in the darkened shaft, which, he testified, led him to believe the elevator had passed his floor without stopping. We are of the opinion that the trial court did not commit error in failing to take the case from the jury under these circumstances. Cf. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504.

It should be noted that, while a special interrogatory was given to the jury with respect to the question of plaintiff's contributory negligence, no interrogatory was submitted with respect to the question of his contributory wilful and wanton misconduct, although an interrogatory

was submitted with respect to the question of defendant's wilful and wanton misconduct. It should further be pointed out that ordinary negligence is no defense in an action predicated upon wilful and wanton misconduct. Yelinich v. Capalongo, 38 Ill App2d 199, 205–206, 186 NE 2d 115.

Defendant's third point is that the trial court should not have permitted plaintiff to present evidence concerning the fatalities which occurred on defendant's premises in December 1957 and April 1959 without first requiring plaintiff to show how they occurred and what connection they had with the circumstances of this case. As to the fatality of April 1959, the report in evidence clearly shows the accident occurred under circumstances paralleling those in the case at bar. The decedent placed his head into the elevator shaft to summon a fellow employee working on a lower floor when a descending elevator crushed his head; the report further shows that the "by-pass" button had been disconnected, allowing the elevator to operate with the doors open at practically all floors.

■ With respect to the fatality of December 1957, while the report does not show how the victim came to his death, it does show that the elevator shaft doors were open and the "by-pass" button plugged. Defendant first objected at trial to the admission of the report as evidence on the ground that the accident was too remote in time from the occurrence in the instant case to be relevant. The court allowed trial counsel to read the report to the jury, on the ground that the accident was the result of the "same agency" as in the instant case. After the report was read and in response to defendant's second and later objection that the report did not state the manner in which the victim met his death, the court commented that the sole reason the report was being allowed into evidence was to show "a pattern, like unto the establishment of a motive or intent or procedure." There was no error in the trial court's ruling in this regard. In any

event, the evidence in the record of defendant's wilful and wanton misconduct was so overwhelming that this single matter could not have had any substantial effect on the jury's verdict.

 Defendant finally maintains the trial court improperly instructed the jury in giving plaintiff's instructions 16 and 17 dealing with the standard of care to be exercised by the operator of an elevator with respect to its passengers. As to instruction 16, the basis of the objection raised on appeal differs from that raised in defendant's post-trial motion and for that reason the objection is waived. Ill Rev Stats 1967, c 110, par 68.1(2). With respect to instruction 17, the instruction correctly states the law applicable to the circumstances in the case at bar. Plaintiff had been accepted as a passenger in defendant's elevator prior to his injury, a situation which parallels the circumstances in the case of Lake St. El. R. Co. v. Burgess, 200 Ill 628, 66 NE 215. See also Davis v. South Side El. R. Co., 292 Ill 378, 127 NE 66, and Kaminsky v. Arthur Rubloff & Co., 72 Ill App2d 68, 218 NE2d 860, both of which are distinguishable on their facts from the instant case. The contention raised by defendant, that the trial court erred in refusing to give to the jury defendant's instructions 9, 10 and 11, is groundless inasmuch as the subject matter of those instructions was covered by other instructions given to the jury.

For these reasons the judgment is affirmed.

Judgment affirmed.

McNAMARA and LYONS, JJ., concur.