GUDRUN HOLLOWAY, Defendant-Appellant, *v.* DAVID HOLLOWAY, Plaintiff-Appellee.

(No. 55943; )

First District (2nd Division)—February 20, 1973.

*Rehearing denied March 20, 1973.*

Gomberg, Missner & Schaps, of Chicago, (Sidney D. Missner, of counsel,) for appellant.

Epstein, Wilsey & Kirsh, of Chicago, (Sanford Kirsh, of counsel,) for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Appellant Gudrun Holloway and appellee David Holloway were married in January 1966. Gudrun is a beautician; David is a Chicago police detective. On May 23, 1967 they became the parents of a little girl whom they named Tammy Mona. March 12, 1968, Gudrun and David were divorced. By an agreement between them, Gudrun was to have the custody of Tammy and David was to pay for support of the child, with rights of visitation.

After the divorce, Gudrun lived in an apartment in Chicago and worked until 9:00 P.M. four days a week, Wednesday through Saturday. She obtained a babysitter for Tammy. Between September 15, 1968 and December of that year, Gudrun could not get a babysitter. Therefore, David's fiancee, the woman he later married, agreed to care for Tammy. This required that the child be taken to "the other end of town" where Tammy stayed every day except Monday and Tuesday.

In 1969, from June 27 until just before Christmas, Gudrun gave the care and custody of Tammy to David and his mother. David's mother lived in Carbondale, a community in southern Illinois. On August 12, 1969, Gudrun and David signed an agreement which, after referring to Tammy, recited that "* * * unfortunate and irreconcilable difficulties have arisen between mother and minor child, as a result of which they are not now living together * * * [and] if it were not due to this agreement, the mother would be forced to give the child up and put this minor child into a foster home * * *." The agreement provided that David was to have custody of Tammy, reserving for Gudrun "reasonable

visitation rights." Tammy remained in David's care either in Chicago or with his mother in Carbondale. Then, early in 1970, after Gudrun moved to another apartment, Tammy was again living with her. On or about April 18, 1970, Gudrun wrote the following handwritten letter to David's mother:

"Dear Mrs. Holloway:

I realize that I should have let you know how Tammy is a long time ago, but there has been too much things I had to do. I have no phone anymore, but hope to get one in my next apartment. I'm moving end of April. So everything is messed up. Tammy has not been happy as she should be ever since she came back. I know I made a mistake taking her back like this, because I really do not spend any time with her at all except on Monday and Tuesday * * *."

A short time later, Gudrun asked David to take Tammy to his mother's home in Carbondale. He did, and from early in May to the end of June 1970, Tammy remained either with David's mother or with him in Chicago.

On June 30, 1970, in the divorce case, David filed a petition alleging that Gudrun, after receiving custody of Tammy, failed to provide her with a home by keeping her with babysitters, with her paternal grandmother and with him "for months on end." David prayed that the divorce decree be modified and that he be given the custody of Tammy, subject to Gudrun's rights of visitation. After hearing evidence that consisted of testimony and documents, the trial court found that Tammy had been subjected to an unstable homelife; that she had been shunted from apartment to apartment, babysitter to babysitter; that she had lived with David and David's mother from time to time; that in signing the agreement with David and in writing the letter to David's mother, Gudrun revealed her inability to care for Tammy; that David had remarried and could provide Tammy with a good home because his present wife knew the child and wanted her. Therefore, the trial court ruled that in Tammy's best interests, she should be in David's care and custody, with "very liberal visitation rights" in favor of Gudrun. Accordingly, the trial court modified the custody provisions of the divorce decree and changed Tammy's custody from Gudrun to David. Gudrun appeals to this court. The only issue she presents is whether the trial court committed reversible error in modifying the custody provisions of the divorce decree.

■■ In resolving this issue, we recognize that in matters of child custody, a trial court's determination should not be reversed unless it is clearly against the manifest weight of the evidence and it appears

that a manifest injustice has been done. (*Wade v. Wade*, 345 Ill.App. 170, 183, 102 N.E.2d 356; *Hahn v. Hahn*, 69 Ill.App.2d 302, 305, 216 N.E.2d 229; *Girolamo v. Girolamo*, 5 Ill.App.3d 627, 632, 283 N.E.2d 713.) This case reveals that between March 12, 1968 and June 30, 1970 when David petitioned the court, Gudrun lived in three different apartments. During that period, when she had Tammy in her custody, much of the actual care of the child was discharged by babysitters. On at least three occasions, Gudrun voluntarily relinquished Tammy's care and custody either to David, his fiancee or his mother. In contrast with Gudrun's situation, when the order changing custody was entered, there was proof that David had remarried and was able to give Tammy a good home with a wife who knew the little girl and wanted her as part of the family.

■■ Stability of environment is an important factor in determining what is in the best interest of a child. (*Cave v. Cave*, 2 Ill.App.3d 782, 276 N.E.2d 793.) Voluntary relinquishment of a child's custody and subsequent marriages of its parents are normally sufficient changes of circumstances to warrant change of custody, without regard to the fitness of the person to whom care of the child has been judicially authorized. (*Kline v. Kline*, 57 Ill.App.2d 244, 205 N.E.2d 775; *Carstens v. Carstens*, 108 Ill.App.2d 439, 248 N.E.2d 135.) In weighing these factors, the guiding star in determining the custody of minor children is the best interest of the child. *Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300.

■■ The trial judge in this case heard evidence consisting of extensive testimony by the parties immediately involved. David supported the allegations of his petition with the testimony of his mother and that of five other witnesses including a physician who examined and treated Tammy at David's request. In addition, he introduced into evidence two documents: the agreement of August 12, 1969 and Gudrun's letter to his mother. We think it important that the trial judge did not find Gudrun an unfit mother. Instead, without reflection on her, he decided only that she was not able to care for her child. Accordingly, recognizing that deciding questions concerning the custody of a child was "[o]ne of the most awesome responsibilities that a court has * * *", the trial judge, modified the divorce decree and changed the custody of Tammy to David with "liberal" visitation rights for Gudrun. This was not reversible error. (*Wilner v. Wilner*, 131 Ill.App.2d 891, 266 N.E.2d 918.) In our judgment, the order was adequately supported by the evidence and did justice to the parties. It is affirmed.

Affirmed.

SCHWARTZ and McGLOON, JJ., concur.