Arlfane J. Bean, Plaintiff-Respondent-Appellant, v. Delbert R. Bean, Defendant-Petitioner-Appellee.

(No. 59284; )

First District (2nd Division)—September 2, 1975.

O'Donnell, Wolff, LeVine, Mazzorana & Krupa, of Chicago (Arthur J. O'Donnell, Howard M. LeVine, and Dirk L. Van Beek, of counsel), for appellant.

S. David Friedlander, of Calumet City, for appellee.

Mr. JUSTICE HAYES delivered the opinion of the court:

Respondent-appellant (hereinafter respondent) Arleane J. Bean, appeals from an order changing the custody of Rose Arleane Bean, the minor child of the parties, from respondent to Delbert R. Bean, petitioner-appellee (hereinafter petitioner).

The issue on appeal is whether the order of the trial court is against the manifest weight of the evidence.

On 15 March 1971, in a divorce action by respondent against petitioner, a decree for divorce was entered which provided, in relevant part, that respondent be awarded permanent care and custody of Rose Arleane Bean, subject to visitation rights in petitioner.

On 29 January 1973, petitioner filed a petition for change of custody of Rose Arleane Bean from respondent to him. Respondent filed an answer to the petition. After a hearing on the petition and answer, the trial court entered an order awarding permanent care and custody of the minor child to petitioner, subject to visitation rights in respondent.

On appeal, respondent argues that the trial court abused its discretion in changing custody of the minor child from the mother to the father because no substantial change in circumstances had occurred since the

entry of the decree for divorce; and that the evidence fails to disclose that it is for the best interest of the child to change the custody of the minor child from the mother to the father.

The rule often expressed in this State, and followed by the court below, is that custody will be awarded or changed consistent with the welfare and best interest of the child, even when both parties are fit to be awarded custody. (*People ex rel. Morris v. Morris*, 44 Ill.2d 66, 68, 254 N.E.2d 478; *Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300.) As to either an initial award or a change of custody, it has been held that stability of environment is an important factor in determining what is the best interest of the child. (*Holloway v. Holloway*, 10 Ill.App.3d 662, 665, 294 N.E.2d 759.) It has also been held that a trial court's determination should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has been done. *Holloway v. Holloway*, 10 Ill.App.3d 662, 294 N.E.2d 759; *Girolamo v. Girolamo*, 5 Ill.App.3d 627, 283 N.E.2d 713; *Sorenson v. Sorenson*, 10 Ill.App.3d 980, 295 N.E.2d 347.

The facts in the case at bar were thoroughly considered by the trial court after an exhaustive hearing had been conducted. Much, if not all, of the testimony was in conflict. Petitioner presented evidence that, when the child was picked up for visitation, she was found to be in a filthy state, her body and clothing dirty, her hair matted and containing foreign matter; that respondent had engaged in the use of drugs, which resulted in irrational conduct on her part; that on one occasion the child had suffered numerous bruises, cuts, and swellings about the face, as a result of an alleged beating by respondent's present husband, James Potter, while he was intoxicated; that respondent and her present husband had numerous arguments, and on one occasion respondent had requested petitioner's sister to take the child over to her house so that the child would not be exposed to the argument; that the child had requested not to be returned to respondent's custody at the end of certain visitation periods; and that certain evidence indicated that the child might have been the victim of an assault by the teenage brother of respondent. The evidence further disclosed that petitioner is gainfully employed, has no other dependent, and resides in a two-bedroom condominium; and that petitioner's mother would care for the child when petitioner was at his place of employment.

On the other hand, respondent offered evidence that she lived in a three-bedroom ranch house in Alberry Heights, Mokena, Illinois, with her husband, James Potter, her daughter, Rose Bean, who then was three years old, and her son, James Potter, Jr., who then was ten months old; that petitioner's witnesses were lying when they said she took

drugs; that her husband had never beaten Rose; that, since they bought the new house, Rose has had her own bedroom and bedroom set; that respondent had confronted her teenage brother about abusing Rose and he was upset about it; and that, since the accusation, she will not permit her teenage brother to live in the house or to be alone with Rose. Respondent stated that she loved Rose very much and would like to keep her custody; that her present husband and Rose get along very well; that she fed Rose three times a day and bathed her at least three times a week; and that many times Rose was dirty when she was picked up for visitation because she had been outside playing. James J. Potter, respondent's present husband, testified that Rose got along well with him and with her little half-brother, James; that he had never beaten Rose, though he had spanked her on occasion; and that he loved Rose and wanted her to remain in the home with his wife and himself. He said that neither he nor his wife take drugs; that the teenage brother of respondent has not lived in the house since December of 1972; that the brother has never been alone with Rose since then; and that he does not think that respondent's brother abused Rose.

At the close of all the evidence, the trial court said that he was of the opinion that "the child will have a more stable home with the father" and that "I want the influence of a stable family life upon the three year old child from now on, and that's why I'm going to change the custody."

We find that there was ample evidence of circumstances subsequent to the initial award of custody to respondent which, if believed, demonstrated that the effect of the trial court's order was to remove the child from an unstable home to a stable home and atmosphere, and to eliminate exposure to conditions which were not conducive to her physical and moral well-being.

In the light of the foregoing, it cannot be said that the trial court abused its discretion or that the order changing custody of the minor child to petitioner is against the manifest weight of the evidence.

We agree with respondent that, in *Carlson v. Carlson* (1967), 80 Ill.App.2d 251, 225 N.E.2d 130, the court in respect of the necessity for evidence of unfitness, distinguished between the initial award of custody and a change of custody, and stated in dictum that "* * * it would be an abuse of discretion by the chancellor to change custody unless there was a proper determination of unfitness on the mother's part [where the mother, as a fit person, had received the initial award of custody], or sufficient proof of changed conditions since the original custody order." Since, however, we have found that there was ample evidence which, if believed, demonstrated "changed conditions since the original

custody order," respondent's contention that *Carlson* holds that there can be no change of custody, absent evidence that she had since become unfit to have custody, is irrelevant.

For the foregoing reasons, the order of the trial court is affirmed.

Order affirmed.

DOWNING, P. J., and STAMOS, J., concur.