LARRY MITCHELL, Plaintiff-Appellant, *v.* GLADYS HENDERSON, Defendant-Appellee.

First District (5th Division)   No. 77-1607

Opinion filed October 27, 1978.

Victor Brown, of Legal Aid Bureau, of Chicago, for appellant.

Dennis Sherman, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from an order denying him and granting defendant the custody of Tasha Daniell Mitchell, a minor. The issues presented are: whether the finding that he had not proved he was the father is against the manifest weight of the evidence and, if he had established parenthood, whether the court erred in not granting custody to him.

Tasha Daniell Mitchell was born on October 6, 1975, to Patricia Henderson, an unmarried woman. Defendant, Patricia's mother, took

custody of Tasha immediately after Patricia's death on November 12, 1975. Subsequently on her pro se petition, she was appointed guardian of the person of Tasha. Plaintiff, who was unaware of defendant's appointment, filed this habeas corpus proceeding alleging that he is the father of Tasha and that it would be in the child's best interest that he be granted custody. After a hearing the trial court found that: (1) plaintiff failed to prove by a preponderance of the evidence that he is Tasha's father; and (2) even if plaintiff had established paternity, it is in Tasha's best interest that she remain with defendant.

Plaintiff testified that from September 1974 until shortly before Tasha's birth he had sexual intercourse with Patricia 10 to 15 times per month; that to his knowledge Patricia had not dated other men during this time; that he went to the hospital the day Tasha was born but he did not see anyone else there who might have been able to corroborate his visit; and that he furnished the hospital staff with information for the child's birth certificate. This document, which was introduced into evidence during the hearing for the limited purpose of identifying the child, listed plaintiff as the father of Tasha. However, plaintiff was unable to identify Patricia's signature on it. He said, however, that he drove Patricia and Tasha home from the hospital to defendant's residence where they lived together for a few weeks, and that later he sent an uncertain number of money orders to Patricia for the child's support, as well as some articles of clothing. The money orders, which amounted to between $10 and $20 each, were sent back to plaintiff by Janetta Sowell, Patricia's sister. On cross-examination he admitted that he sent these payments only after his attorney advised him that this would work to his advantage and that prior thereto he had offered no financial assistance.

Plaintiff further testified that for a period of approximately two weeks just prior to Patricia's death, she and Tasha lived with him in the apartment he then shared with his sister, Shirley Mitchell. After this, Patricia and Tasha left the apartment, but Patricia did not say where she was going and she died a few days later. He stated also that he discussed the custody of Tasha with defendant on the night of Patricia's death; that defendant subsequently informed him that she intended to keep Tasha; and that while he now sees Tasha occasionally he has never told her that he is her father. Concerning his ability to take proper care of the child, plaintiff testified that he lived at home with his parents, two younger brothers and a younger sister; that he earns approximately $500 a month in commissions as a sales manager and works from about 4 p.m. to 10 p.m.; and that his married sister, Rita Kennedy, who does not reside at plaintiff's home, would be able to care for Tasha during the day when everyone else is at work or school.

Eula Holiday, plaintiff's mother, testifying as a witness for plaintiff,

stated that she had been at the hospital on the day Tasha was born, although she left before plaintiff arrived; that she had a discussion with defendant about the child's name, and that Janetta Sowell had told her that Tasha's middle name, Daniell, was intended to reflect plaintiff's middle name, Darnell. Holiday also corroborated plaintiff's testimony that plaintiff, Patricia and the child lived together for a brief period of time.

Rita Kennedy, plaintiff's sister, also testified that plaintiff, Patricia and the child had lived together, and that she would be able to assist plaintiff in caring for Tasha during the day if plaintiff is awarded custody.

Defendant testified that Patricia dated other men as well as plaintiff; that Patricia had told her that plaintiff was not the child's father; that defendant did not know who might be the father; that Patricia and Tasha never lived with plaintiff; and that she never discussed the child's name with Eula Holiday. She stated that she filed the petition resulting in her appointment as guardian of the person of Tasha. The petition was typed by a court clerk and she did not remember listing plaintiff as the father, and that if she did, it was a mistake. The petition which was admitted into evidence listed plaintiff as Tasha's father.

Janetta Sowell, Patricia's sister, testified that Patricia dated men other than plaintiff; that she never discussed the child's name with Eula Holiday; that Patricia and Tasha never lived with plaintiff; that she quit work after Patricia's death in order to care for the child; that defendant lives on the second floor of a building with Tasha's half-sister Manetta, a child born previously to Patricia; and that Janetta and her husband reside on the first floor with their two children.

OPINION

■■ We initially note that habeas corpus is a suitable proceeding for determining what is in a child's best interest and awarding custody on that basis. (*People ex rel. Strand v. Harnetiaux* (1970), 46 Ill. 2d 424, 263 N.E.2d 30; *People ex rel. Elmore v. Elmore* (1977), 46 Ill. App. 3d 504, 361 N.E.2d 615; *People ex rel. Irby v. DuBois* (1976), 41 Ill. App. 3d 609, 354 N.E.2d 562.) Thus, plaintiff's petition was a proper means of seeking resolution of the question of Tasha's custody.

Plaintiff first contends the finding that he had not proved paternity is against the manifest weight of the evidence. We disagree. Initially we note that the testimony in the trial court was conflicting. Plaintiff testified that he began sexual relations with Patricia in 1974 and continued until shortly before Tasha's birth, and to his knowledge she dated no other men during this time; that he was at the hospital the day Tasha was born; that he gave information to hospital personnel for the child's birth certificate; that he drove Patricia and Tasha home from the hospital to defendant's

residence; that he sent money orders to Patricia for the child's support; that Patricia and Tasha lived with him for a short period of time; that he discussed the custody of Tasha with defendant on the night of Patricia's death; and that the birth certificate shows him to be the father. Plaintiff points also to defendant's previous petition to be appointed guardian of the person of Tasha, wherein he was named as the father; and that his mother not only corroborated his testimony that he, Patricia and Tasha had lived together, but she also testified that Patricia's sister had told her Tasha's middle name was modeled after plaintiff's.

To the contrary, defendant and Patricia's sister stated that Patricia dated a number of other men prior to the time of possible conception; that Tasha was not named after plaintiff; and that Patricia and Tasha never lived with plaintiff but continuously lived with defendant. Defendant also testified that Patricia had told her plaintiff was not Tasha's father; that she did not remember placing plaintiff's name on the guardianship petition; and that if she did, it was a mistake.

■ In view of such sharply conflicting testimony, the birth certificate on which plaintiff is listed as Tasha's father becomes significant. Where evidence is admitted for a limited purpose, then it may be considered only for that purpose. (*Estate of Tognotti* (1970), 128 Ill. App. 2d 120, 262 N.E.2d 803; *Scott v. Instant Parking, Inc.* (1968), 100 Ill. App. 2d 293, 241 N.E.2d 517; *Munyon v. Wilson* (1944), 322 Ill. App. 680, 54 N.E.2d 609.) In the case at bar, plaintiff introduced the birth certificate for the limited purpose of "identifying the child." We do not believe that this includes identifying the parents. Thus, while a birth certificate may be persuasive of paternity if admitted for that purpose (*People ex rel. Wisneski v. Thomas* (1974), 23 Ill. App. 3d 489, 319 N.E.2d 559), it is not so indicative in this case because it was introduced into evidence only for the purpose of identifying the child. We assume because of the limitation on its admission that the trial court gave little credence to it as identifying plaintiff as the father.

■ Thus, although there is considerable testimony on both sides of the paternity question, there is nonetheless a substantial amount of testimony supporting the trial court's decision. We therefore cannot say that the conclusion that plaintiff failed to prove paternity is against the manifest weight of the evidence. Accordingly, we shall not disturb that finding. *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 158 N.E.2d 613; *Bean v. Bean* (1975), 31 Ill. App. 3d 899, 335 N.E.2d 72; *Holloway v. Holloway* (1973), 10 Ill. App. 3d 662, 294 N.E.2d 759.

Since plaintiff has failed to prove that he is Tasha's father, custody obviously should remain with defendant. However, even if we assume plaintiff to be the father, we would not, as plaintiff requests, find that it is in Tasha's best interest that he have custody of her.

■ It is correct, as plaintiff states, that section 132 of the Probate Act provides that a surviving parent who is a fit person is entitled to the custody of his or her minor child. (Ill. Rev. Stat. 1975, ch. 3, par. 132.) But this superior right obtains only when it is consistent with the best interest of the child. (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417; *Giacopelli v. Florence Crittenton Home*.) If it is in the child's best interest that custody be granted to someone other than the parent, then the latter's natural right to custody must yield. (*Giacopelli v. Florence Crittenton Home; Sullivan v. People ex rel. Heeney* (1906), 224 Ill. 468, 79 N.E. 695; *Mackie v. Mackie* (1967), 88 Ill. App. 2d 61, 232 N.E.2d 184; *In re Guardianship of Nichols* (1966), 70 Ill. App. 2d 376, 216 N.E.2d 690.) And this is so even if the parent is not found unfit. (*People ex rel. Edwards v. Livingston; Giacopelli v. Florence Crittenton Home; Mackie v. Mackie; People ex rel. Kuhn v. Weeks* (1923), 228 Ill. App. 262.) Thus, the fitness of the parent is to be considered with other factors having a bearing on the welfare of the child with custody ultimately determined on the familiar "best interest" standard. *Giacopelli v. Florence Crittenton Home; Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300; *Gehn v. Gehn* (1977), 51 Ill. App. 3d 946, 367 N.E.2d 508; *Strouse v. Strouse* (1966), 75 Ill. App. 2d 362, 220 N.E.2d 485.

In the instant case it appears that since Patricia's death Tasha has lived in defendant's home along with her half-sister, Manetta, her aunt, Janetta Sowell, and the latter's husband and two children who are, of course, Tasha's cousins. Janetta testified that she quit work in order to care for Tasha after Patricia's death and there was ample evidence in the record to indicate that Janetta has provided and would continue to properly provide daytime care for Tasha. During evenings Tasha is cared for by defendant and the rest of the family. Plaintiff admits that defendant and her family have provided a stable environment for Tasha, an important factor in determining what is in the best interest of a child. *Bean v. Bean* (1975), 31 Ill. App. 3d 899, 900, 335 N.E.2d 72, 73; *Holloway v. Holloway* (1973), 10 Ill. App. 3d 662, 665, 294 N.E.2d 759, 761.

■ Nonetheless, plaintiff wishes to remove Tasha from this stable environment to live with himself, his parents, two younger brothers and a younger sister. We recognize that plaintiff appears to be fit and well-intending but, as stated above, the fact that a parent is fit does not mean that the best interest of the child necessarily lies with the parent. We note, however, that Tasha barely knows plaintiff, and she has never been led to believe that plaintiff is her father. If we were to grant custody to plaintiff, we would be removing Tasha from the family including her blood-sister, Manetta, with whom she has lived since birth and placing her with strange and unfamiliar people. Furthermore, plaintiff testified that no one with whom he resided would be at home during the day to care for Tasha, but

that his married sister, Rita Kennedy, who lives elsewhere, would provide daytime care for the child. There was no testimony, however, regarding either her fitness for this task or whether she could conveniently and regularly tend to the child. In addition, while plaintiff's family would be at home during the evening, plaintiff himself would be at work and could rarely see Tasha during weekdays.

In the light thereof, we conclude that the record does not establish it would be in Tasha's best interest to separate her from her grandmother, aunt, half-sister, and other members of her family who have been tending to her needs so that she may live with her alleged father and his family whom she does not know and who apparently would not be able to give her the type of care and attention she currently enjoys.

Moreover, there appears to have been no change in circumstances which would lead to a change of the custody awarded respondent by her appointment as guardian of the person of Tasha. The review of that appointment is not before us for review and it remains in full force and effect.

For the reasons stated, we feel that the ruling of the trial court on the ultimate question of custody was not against the manifest weight of the evidence (*Bean v. Bean; Holloway v. Holloway*), and the judgment of the trial court is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.