THE PEOPLE *ex rel.* JAMES W. SCHACHT, Acting Director of Insurance as Rehabilitator for Main Insurance Company, Plaintiff-Appellee, *v.* MAIN INSURANCE COMPANY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 83—2303

Opinion filed March 22, 1984.

Howard E. Gilbert and Michael D. Richman, both of Herman, Tannebaum, Levine & Gilbert, of Chicago, for appellants.

Jeremiah Marsh, Michael Schneiderman, Michael M. Conway, and Mary K. Butler, all of Hopkins & Sutter, of Chicago, for appellee.

JUSTICE ROMITI delivered the opinion of the court:

This is an appeal, pursuant to Supreme Court Rule 307(a)(5) (87 Ill. 2d R. 307(a)(5)), from an order of the trial court entered August 25, 1983, directing that Main Insurance Company (Main) be liquidated under the provisions of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 613 *et seq.*). Appellants Main and Mainway Financial Corporation (an Illinois corporation owning 100% of Main's stock) contend that the trial court erred in admitting certain documentary and testimonial evidence concerning Main's consumer claims reserve. It is undisputed that this evidence, if properly admitted, established that Main was insolvent and thus subject to liquidation.

We affirm.

This is the second appeal of this cause. The trial court first ordered Main's liquidation in June 1982, but that order was stayed pending Main's appeal to this court. In that first appeal (*People ex rel. Schacht v. Main Insurance Co.* (1983), 114 Ill. App. 3d 334, 448 N.E.2d 950), we found that the trial court had erred in refusing to allow Main to have a sufficient amount of its assets to prepare a transcript of the proceedings for appeal. Because we could not review Main's claims of error without a proper record, we remanded the cause to the trial court with instructions to permit Main to provide the necessary record for review. We also held that the trial court could, if it so desired, reconsider its order of liquidation in light of our determination that a case relied on by the plaintiff (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, in which the court announced a new rule permitting opinion testimony based on facts not in evidence), was not applicable to the initial trial of this cause. On remand the trial court granted Main's motion for reconsideration but then again ordered Main's liquidation based on a finding of insolvency.

As we have noted, Main's contentions on appeal relate to the admission of evidence concerning Main's consumer claims reserve (the amount of money estimated to be needed to pay off all pending policy claims). Accordingly, our summary of the facts will focus primarily on the evidence relating to that reserve.

Main is an Illinois corporation organized under the Illinois Insur-

ance Code (Ill. Rev. Stat. 1983, ch. 73, par. 613 *et seq.*) to insure property and casualty risks, with insurance policies issued in several States including Illinois, Wisconsin, Florida, Michigan, Georgia, and Alabama. In January 1977 the Director of the Department of Insurance filed a complaint in the circuit court of Cook County seeking the rehabilitation of Main, pursuant to section 188 of the Illinois Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 800). Main consented to being placed in statutory rehabilitation and on January 19, 1977, Judge Donald J. O'Brien appointed the Director as the rehabilitator of Main. The order directed him to:

"*** immediately take possession of the property, business and offices of [Main] *** and take such action as the nature of the cause and the interests of the policyholders, creditors, stockholders or the public may require subject to further orders of this Court."

In February 1978 William Allen, a certified public accountant, was hired as a special consultant to the Department. Allen testified that he had previously served for one year as Main's comptroller and for two years as its treasurer and executive vice-president, finally leaving the company in 1972. He had been primarily responsible for preparing Main's financial statements. It has also been his job to review the adequacy of Main's claims reserve and to review procedures for establishing reserves on new claims. Allen was asked to take the position with the Department by Main's president, William Reib.

It was Allen's task to determine the financial condition of Main in rehabilitation. He found that the last audited statement for the company was as of December 31, 1974, and the last quarterly statement was dated December 31, 1976. Thus he first had to reconstruct Main's financial records by working backwards to source documents, attempting to find the general ledgers of the company along with supporting registers and other documents. He then prepared work papers in the nature of a financial statement for Main as of July 31, 1978, using Main's figures except for errors found in the course of his reconstruction of the records.

In all subsequent financial statements Allen also carried forward Main's figures until the accuracy of those figures was proved or disproved. He prepared subsequent statements for Main as of September 30, 1978, and September 30, 1979. After resolving several financial issues not at issue in this appeal, the remaining matter to be resolved was the adequacy of Main's claims reserve. At Allen's direction Tony Mesin and other personnel from the Department's Bureau of Liquidation inventoried all of Main's claims files to determine what the

proper reserve should be. After performing this review in October and November of 1979 Mesin calculated the necessary reserve to be $3.2 million. This figure, if accurate, would have established Main's insolvency, as Main had set its own reserve at $1.4 million.

Allen met with Department personnel, telling them he believed Mesin's figures were probably too high but Main's were probably too low. It was then determined that there should be an independent audit of the claims files. Kevin Martin, a partner in the Chicago law firm of Wildman, Harrold, Allen, and Dixon, was chosen because he was acceptable to the Department and to Main's president, William Reib.

Martin testified that prior to becoming an attorney he had worked for over two years as an insurance company claims adjuster, conducting investigations and negotiating claims. He had also spent two years as an insurance company supervisor. One of his duties in that position was to make estimates of reserves on individual cases. In his legal career Martin had handled thousands of personal injury cases. Since 1973 he and his firm had represented Main in most of its personal injury litigation. In 1975 he assumed primary responsibility for representing Main.

In December 1979, when Martin began his independent review of Main's consumer claims files, he started with a representative group of 86 files selected by Allen. Fifty of the files involved claims reserves previously estimated to be over $3,000 and the other 36 had reserves estimated to be under $3,000. Martin was given about $325,000 with instructions to attempt to settle these claims in order to determine if the estimates were accurate. After settling a substantial portion of the claims he found that he was generally successful in settling the claims over $3,000 for amounts under the estimated reserves but that for those under $3,000 there was a substantial discrepancy: the previous estimates were too low. On balance he found that the reserves previously set were higher than his estimates and higher than what he actually paid out. However, upon a review of these results, and also based upon an independent clerical review, William Allen projected that Main's total reserve was understated by $1 million. Because Main disputed this projection Martin was instructed to review all of Main's claims files and to prepare his own claims reserves for them.

Martin testified that these files contained such matters as notices of loss, investigators' reports, photographs, correspondence from attorneys, depositions, transcripts, evaluations of the case and evaluations of witnesses. In determining a reserve amount for each file he

took into consideration the fact that nobody had received payment in four years, so that a discounted offer would probably be accepted. Thus in working with the original 86 cases he had discounted the amounts of any consent judgments by 10%. This had worked so well that he increased that discount to 25%. The average time Martin spent on each of the approximately 500 files he reviewed was one hour. He testified that his estimates were recorded by his secretary at his direction as he reviewed each file. These figures were placed by her in working papers admitted into evidence as plaintiff's exhibit No. 3 with the express consent of Main's attorney (but only as to Martin's estimates, not the estimates of Main and Tony Mesin which were also recorded in that exhibit). Martin testified that his estimates as recorded in that exhibit corresponded to estimates attributed to him in another listing of file by file estimates which was admitted into evidence, over Main's objections, as plaintiff's exhibit No. 2. This latter document, which also listed the estimates of Mesin and Main, was prepared by a Main employee. Martin testified that the estimates attributed to him did constitute his opinion of what was the lowest reasonable reserve for Main on each file.

Kevin Martin completed his review, as reflected in exhibit No. 2, around Easter of 1980. According to William Allen exhibit No. 2 included all but about 40 of Main's claims files. By June of 1980 those missing files had been located and half of them were reviewed by Martin. For the remaining files, except those that were settled by the Department, Allen relied on Main's estimates. Martin had never totalled his file by files estimates. Utilizing Martin's estimates in exhibit No. 2 Allen prepared a clerical reconciliation of the figures and a work paper summarizing Martin's figures. Those documents were admitted into evidence, over Main's objections, as plaintiff's exhibits Nos. 8 and 10. Allen then prepared an unaudited financial statement for Main as of June 30, 1980, in order to finally determine whether Main was solvent. The statement was admitted into evidence, over Main's objections, as plaintiff's exhibit No. 1. Included in that statement was a calculation of Main's claims reserve, based primarily on Kevin Martin's calculations. This final reserve figure was $1,837,539.36 and resulted in a determination, contained in exhibit No. 1, that Main was insolvent with a deficit surplus of $1,095,497. In his testimony Allen stated that exhibit No. 1 did reflect Main's financial condition as of June 30, 1980. In oral argument before this court Main has indicated that it disputes only the claims reserve figure in that document. Also admitted into evidence over Main's objection was plaintiff's exhibit No. 9, a schedule Allen prepared to show the signifi-

cant differences between Main's September 30, 1979, financial statement and the June 30, 1980, statement. This latter financial statement (plaintiff's exhibit No. 1) was also attached to the Department's complaint for liquidation.

■ We first consider Main's contention that the documents relating to Main's claims reserve, which as we have noted were admitted over Main's objections, were improperly admitted. The Department of Insurance contends that the documents were properly admitted as business records under Supreme Court Rule 236 (87 Ill. 2d R. 236), which provides:

"(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business, to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business,' as used in this rule, includes business, profession, occupation, and calling of every kind.

(b) This rule does not apply to the introduction into evidence of medical records or police accident reports."

The rule by its terms is liberal with respect to what may constitute a business (see *In re Estate of Severson* (1982), 107 Ill. App. 3d 634, 437 N.E.2d 430), and Main has not contended on appeal that these documents were not prepared in the normal course of the business of the Director of the Department of Insurance acting as rehabilitator. Under the pertinent provisions of the Illinois Insurance Code when Main voluntarily submitted to rehabilitation it became the duty of the Director, as rehabilitator, to conduct the business of the company. (Ill. Rev. Stat. 1981, ch. 73, par. 804(1).) It was pursuant to this authority that the evaluation of the claims reserve was made by Kevin Martin and that William Allen prepared the other contested documents.

What Main does contend is that these documents were not prepared at the time of the transaction at issue or within a reasonable time thereafter, as required by Rule 236. (87 Ill. 2d R. 236; *A.J. Davinroy Plumbing & Heating v. Finis P. Ernest, Inc.* (1980), 87 Ill. App. 3d 1047, 409 N.E.2d 372.) The one document to which Main spe-

cifically directs this objection on appeal is plaintiffs' exhibit No. 2, which contained Kevin Martin's claim reserve computations for each file. Main appears to object to the other documents on this ground only to the extent they also contained the same computations. Main contends that these entries were made by Martin well after the "event" occurred, apparently referring to the time at which the particular claims arose. It is true that Martin's work, performed in early 1980, involved a review of files relating to claims arising years earlier, but Martin was computing *current* estimates of what those claims could be settled for. Martin testified that as he reviewed each file and computed a claim reserve figure that figure was recorded by his secretary at his direction. Therefore we find that the reserve figures reflected in the documents at issue were prepared contemporaneously with the transaction involved, Kevin Martin's computation of the current amount each claim could be settled for.

■ Main also contends that the entries constituted opinions and as such were not admissible as business entries. The only support offered by Main for this proposition is a partial quotation from Cleary and Graham who, in commenting on Rule 236 state in part that "[e]ntries, it has been said, must be factual in character and not consist of 'opinions' or 'conclusions.' " (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 803.10, at 441 (3d ed. 1979).) But a more complete quotation is more enlightening:

> "Entries, it has been said, must be factual in character and not consist of 'opinions' or 'conclusions.' *See Wright v. Upson*, 303 Ill. 120, 135 N.E. 209 (1922), which seems to insist upon this requirement to an unwarranted extreme in the case of hospital records, discussed specifically in sec. 803.11 infra. This is contrary to the Federal Rule of Evidence 803(6), 65 F.R.D. 131, 155 (1975), and to the trend of authority generally. McCormick, Evidence sec. 307 (Cleary ed. 1972)."

To the extent that *Wright* has any continuing validity it must be noted that it concerned hospital records, which are specifically excluded by Rule 236. Main has cited no cases decided under Rule 236 or under the prior Federal statute on which Rule 236 was based (28 U.S.C.A. sec. 1732 (1966), amended 1975 to eliminate this codification, which is now covered by Fed. R. Evid. 803(6)), in which business records were excluded because they contained opinions. However we would note that courts in a number of cases relying on our rule or the Federal statute have admitted business records containing opinion, although the issue of their status as opinion was not specifically addressed. (*DePinto v. Provident Security Life Insurance Co.* (9th Cir.

1967), 374 F.2d 37, *cert. denied* (1967), 389 U.S. 822, 19 L. Ed. 2d 74, 88 S. Ct. 48, applying the old Federal statute to permit a report of an examination of the affairs of an insurance company made by an Arizona Insurance Department examiner; *Bradley v. Booz, Allen & Hamilton, Inc.* (1978), 67 Ill. App. 3d 156, 384 N.E.2d 746, finding admissible under Rule 236 the impressions of an interviewer concerning consumer survey interviews; *Newark Electronics Corp. v. City of Chicago* (1970), 130 Ill. App. 2d 1021, 264 N.E.2d 868, admitting under Rule 236 a compilation of computations of damages from a flood.) In our view the rule does not exclude business entries because they contain opinion; rather that fact constitutes one of the "other circumstances" which do not bar an entry but may affect the weight attached to it.

■ Main also contends the opinion *testimony* of Kevin Martin and William Allen concerning the accuracy of Martin's claims reserve figures was improperly admitted because of a lack of a sufficient factual foundation. This contention is without merit, as we have already determined that the claims reserve figures themselves were properly admitted as business records. Furthermore, although Main notes that none of the underlying files were admitted into evidence, they were all available for Main's use at trial. The trial court informed Main's attorneys that they could utilize any file they wished in an effort to impeach Martin's methodology or accuracy in arriving at his figures. The record establishes that counsel for Main did utilize a number of those files in such an attempt. Under these circumstances, where the underlying records, involving some 500 files, were so voluminous as to render their separate admission into evidence extremely cumbersome and time-consuming, and where the records were available at trial for use in cross-examination, we find no error in the admission of the opinion testimony at issue. See *612 North Michigan Avenue Building Corp. v. Factsystem, Inc.* (1977), 54 Ill. App. 3d 749, 370 N.E.2d 236; *Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 354 N.E.2d 415.

We would also note that Kevin Martin's opinion was based on his firsthand observation of data in the claims files. As an expert on the evaluation of claims (a status which is apparently not disputed and which our summary of his experience amply supports), he would be permitted to express his opinion based on his observations even assuming the absence of a sufficient factual basis in the record itself. *Skalon v. Manning, Maxwell & Moore, Inc.* (1970), 127 Ill. App. 2d 145, 262 N.E.2d 146; E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 703.1 (3d ed. 1979).

Because we have concluded on the bases just discussed that the trial court did not err in admitting the challenged documentary and testimonial evidence, we need not reach the Department's other arguments for admission of this evidence. We would only note that the trial court's determination that Main was insolvent was also supported by documentary evidence introduced by Main. In an apparent effort to establish that the Department had produced widely varying estimates of Main's financial condition, Main introduced defendants' exhibits Nos. 5 and 6, financial statements for Main prepared by the Department as of September 30, 1979 and May 31, 1980. The claims valuation figures utilized in those documents, if substituted for the figure contained in exhibit No. 1, which the Department relied on, would still establish that Main was insolvent.

■ Main contends that the use of this evidence must be restricted to the impeaching purpose for which Main apparently intended it. But the cases relied on for this proposition by Main all involve instances where that limited purpose was explicitly stated at trial. (*Mitchell v. Henderson* (1978), 65 Ill. App. 3d 363, 382 N.E.2d 650; *Munyon v. Wilson* (1944), 322 Ill. App. 680, 54 N.E.2d 609.) Main did not attempt to limit the trial court's consideration of this evidence; it sought no ruling from the court on such a limitation and made no representation to the court of any limited purpose. Under these circumstances Main waived any objection to the use of these documents as general evidence. (*Eizerman v. Behn* (1956), 9 Ill. App. 2d 263, 132 N.E.2d 788.) Because no such restriction was placed on the use of the evidence, it became general evidence and Main, as the party offering it, cannot now contend that the documents were not evidence of the facts stated in them. (*Dill v. Widman* (1952), 413 Ill. 448, 109 N.E.2d 765; *Wilkinson v. Mullen* (1975), 27 Ill. App. 3d 804, 327 N.E.2d 433.) Thus it is apparent that even without consideration of the evidence objected to by Main, but considering instead the evidence proffered by Main in conjunction with that portion of the financial statement of June 30, 1980, conceded by Main to be valid, the trial court was justified in declaring Main to be insolvent.

The judgment of the trial court is affirmed.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.